STATE OF NORTH CAROLINA v. FREDERICK W. CORBETT

No. 198A82

(Filed 27 September 1983)

**1. Criminal Law § 128.2— statement by prospective juror—denial of mistrial**

A statement by a prospective juror who was later excused for cause that in his opinion defendant was guilty did not cause the remaining prospective jurors to become unable to render a verdict based on the evidence presented in court so as to require the trial court to grant defendant's motion for a mistrial.

**2. Criminal Law § 92.3— consolidation of multiple charges against same defendant—harmless error**

The trial court erred in granting the State's motion to consolidate charges against defendant for kidnapping and rape of one victim on 16 August, kidnapping and rape of a second victim on 2 September, and kidnapping of a third victim on 10 September, since the events arising on each of the three dates were separate and distinct and not part of a single scheme or plan. However, the erroneous consolidation of the charges was not prejudicial error since evidence of each of the offenses would have been admissible in the separate trials of the others in order to prove the identity of the assailant, and the record did not support a conclusion that the consolidation unjustly and prejudicially hindered or deprived defendant of his ability to defend one or more of the charges. G.S. 15A-926.

**3. Jury § 7.9— prospective jurors who had formed opinion before trial—denial of challenge for cause**

The trial court did not err in the denial of defendant's challenge for cause under G.S. 15A-1212 of three prospective jurors who stated they had formed an opinion before trial as to defendant's guilt or innocence where each of these jurors thereafter stated without equivocation that she could set aside her prior opinion and try the cases solely on the evidence presented in court.

**4. Criminal Law § 15.1— pretrial publicity—denial of change of venue or special venire**

The trial court did not err in the denial of defendant's motion for a change of venue or special venire because of pretrial publicity where newspaper articles presented by defendant in support of his motion were not inflammatory

State v. Corbett

and did not impede defendant from receiving a fair and impartial trial, and where three prospective jurors who initially stated that they had formed an opinion as to defendant's guilt or innocence declared upon further questioning that they could base their conclusions solely upon evidence and arguments presented in court.

**5. Criminal Law §§ 66.9, 66.15— viewing of newspaper photograph of defendant—effect on lineup and in-court identifications**

A kidnapping victim's viewing of a newspaper photograph of defendant did not result in a very substantial likelihood of irreparable misidentification of defendant as her assailant so as to taint her identification of defendant in a subsequent pretrial lineup where the evidence tended to show that the victim observed her assailant's face in adequate light for at least five minutes during the twenty minutes he confined her; at the time of the kidnapping, the victim was paying sufficient attention to see and remember her assailant; the victim unequivocably identified defendant during the lineup as her assailant; and the crime occurred only one month before the lineup and three months before trial. Furthermore, even if the newspaper photograph was suggestive, the evidence supported the trial court's determination that the victim's in-court identification of defendant was based on her viewing of defendant at the time of the crimes and was of independent origin from the pretrial procedures.

**6. Criminal Law § 66.1— photographic, lineup and in-court identifications—consumption of beer and LSD by victim**

Photographic, lineup and in-court identifications of defendant by a kidnapping and rape victim were not inherently incredible because the victim may have consumed several beers and may have taken a dose of LSD during the day prior to the crimes where the evidence tended to show that the victim had the opportunity to observe defendant's face when he abducted her from a telephone booth and when she later tried to get out of his car, and that the victim paid attention to her assailant's voice and later based her identification of defendant in a lineup on both his observable appearance and the sound of his voice after all those in the lineup were directed to speak a few words. Whether the victim's faculties of perception were impaired, and the degree to which they were, if any, was an appropriate subject for cross-examination.

**7. Rape and Allied Offenses § 5— first degree rape—sufficiency of evidence**

The State's evidence was sufficient to support conviction of defendant for first degree rape where it tended to show that defendant abducted the victim from a telephone booth and forced her into his car; when the victim attempted to get out of the car, defendant grabbed her and pulled her back in; defendant blindfolded the victim, made her place her head on his lap and drove off holding a knife to the victim's throat; defendant drove to a wooded area where he forced the victim to drink two cups of liquor; still holding the knife, defendant made the victim crawl into the backseat of the car; defendant then got into the backseat, held the knife to the victim's throat, and forced her to remove her clothing; defendant then undressed himself and had forcible intercourse with the victim; and during this time the victim was crying and told defendant to please not hurt her.

**8. Criminal Law §§ 50.2, 89.4— opinion as to inconsistencies in victim's statement**

The trial court properly excluded an officer's opinion or conclusion that there were inconsistencies in a kidnapping and rape victim's statement to him about the events in question.

**9. Rape and Allied Offenses § 6— first degree rape—failure to charge on second degree rape**

In a prosecution for first degree rape, the trial court did not err in failing to charge the jury on second degree rape where all of the evidence showed that defendant used a knife while raping the victim. G.S. 14-27.2(a)(2)(a); G.S. 14-27.3.

**10. Criminal Law § 112— instructions—no shifting of burden of proof to defendant**

The trial court's instruction that "[i]f you find the facts to be as defendant's evidence tends to show them, then you are to acquit the defendant" did not place on defendant the burden of proving his innocence when considered in context.

Justice EXUM dissenting.

Justice FRYE dissenting.

ON appeal from judgments entered by *McLelland, J.,* at the 14 December 1981 Criminal Session of Superior Court, ALAMANCE County. Heard in the Supreme Court 9 May 1983.

Defendant was charged in indictments proper in form with kidnapping in the first degree of Sheila Burns Ray, kidnapping in the first degree and rape in the second degree of C. Overby, and kidnapping in the first degree and rape in the first degree of Barbara M. Small. Defendant was convicted of kidnapping in the second degree of Sheila Ray, kidnapping in the first degree and rape in the second degree of Cheryl Overby, and kidnapping in the first degree and rape in the first degree of Barbara Small.

Evidence presented by the state tends to show the following. On 10 September 1981 about 1:00 a.m., Sheila Ray had just parked her car in the parking lot of her apartment complex when defendant forced his way into her automobile. Defendant was armed with a knife and struggled with Ms. Ray. During the struggle Ms. Ray bit defendant on his thumb as he put his fingers into or over her mouth to stop her from screaming. Ms. Ray managed to escape from defendant and ran into her apartment where she called the police. Defendant's wallet and fingerprints were found inside Ms. Ray's car. When arrested at his residence several blocks from Ms. Ray's apartment two hours after the assault, defendant's thumb bore a wound identified as a human bite mark.

The state's evidence further tends to show that on 2 September 1981 between 2:00 and 4:00 a.m., defendant abducted Ms. Barbara Small from a telephone booth in the City of Burlington. He forced Ms. Small into a small white car, blindfolded her, and drove her out into the country. Defendant forced Ms. Small to drink two cups of liquor and then raped her at knifepoint.

In addition, the state's evidence shows that about midnight on 16 August 1981, Ms. Cheryl Overby was driving along a road in Graham when defendant, driving a small white car, forced her off the road. Defendant got out of his car, forced himself into Ms. Overby's car, and drove the two behind a house. Defendant raped Ms. Overby and then let her go.

Defendant sought to prove alibi as a defense to each charge.

*Rufus L. Edmisten, Attorney General, by Christopher P. Brewer, Assistant Attorney General, for the state.*

*Daniel H. Monroe for defendant.*

MARTIN, Justice.

We have carefully reviewed each of defendant's assignments of error and conclude that he received a fair trial, free of prejudicial error.

[1] Defendant first contends that the trial court ruled erroneously with respect to several of his motions during the jury selection process. During the state's questioning of prospective juror Little, the state asked the following:

> [STATE]: All right. Have you prior to coming to court heard or read anything that you think pertains to these charges from any source?
>
> MR. LITTLE: Been following it pretty close.
>
> [STATE]: In the newspapers?
>
> MR. LITTLE: Newspapers and . . .
>
> [STATE]: Based on what you've read in the papers, sir, did you form any kind of opinion about how the cases ought to come out?
>
> MR. LITTLE: Guilty as far as I'm concerned.

State v. Corbett

At this juncture, defendant moved for a mistrial, which the court denied. Shortly thereafter, defendant moved to excuse Mr. Little for cause, and this motion was also denied. Mr. Little was excused for cause on other grounds later in the proceedings. Defendant argues that Mr. Little's remark that he believed defendant was guilty so prejudiced his defense that it was impossible for defendant to receive a fair trial by the jury that was eventually impaneled. Defendant assumes that the remark of one prospective juror before jury selection was completed so infected the ability of the remaining prospective jurors to exercise their own judgment that a mistrial ought to have been granted.

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 6 L.Ed. 2d 751, 755 (1961). Generally, a juror who has formed an opinion as to defendant's guilt or innocence is not impartial and ought not serve. N.C. Gen. Stat. § 15A-1212(6) (1978). The defendant must prove the existence of an opinion in the mind of a juror that will raise a presumption of partiality. *Murphy v. Florida,* 421 U.S. 794, 800, 44 L.Ed. 2d 589, 595 (1975).

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd, supra,* 366 U.S. at 722-23, 6 L.Ed. 2d at 756.

Defendant has failed to establish that the mere fact that one prospective juror who was later excused for cause stated that in his opinion defendant was guilty caused the remaining prospective jurors to become unable to render a verdict based on the

evidence presented in court. Defendant has presented no evidence that Mr. Little's opinion carried *any* weight with the jurors selected. Mr. Little did not serve as a juror. The trial court's denial of defendant's motion for a mistrial was not error.

[2] Defendant next argues that the trial court erred in granting the state's motion to consolidate defendant's five cases for trial. N.C.G.S. 15A-926 provides in part as follows:

§ 15A-926. Joinder of offenses and defendants.—(a) Joinder of Offenses.—Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan.

This statute, which became effective in 1975, differs from its predecessor, in part by disallowing joinder on the basis that the acts were of the same class of crime or offense when there is no transactional connection among the offenses. *State v. Greene*, 294 N.C. 418, 241 S.E. 2d 662 (1978). *See also State v. Silva*, 304 N.C. 122, 282 S.E. 2d 449 (1981); *State v. Bracey*, 303 N.C. 112, 277 S.E. 2d 390 (1981); *State v. Powell*, 297 N.C. 419, 255 S.E. 2d 154 (1979). As we stated in *Silva*:

A mere finding of the transactional connection required by the statute is not enough, however. In ruling on a motion to consolidate, the trial judge must consider whether the accused can receive a fair hearing on more than one charge at the same trial; if consolidation hinders or deprives the accused of his ability to present his defense, the charges should not be consolidated. *State v. Greene*, 294 N.C. 418, 241 S.E. 2d 662 (1978); *State v. Davis*, 289 N.C. 500, 508, 223 S.E. 2d 296, 301, *death sentence vacated*, 429 U.S. 809, 97 S.Ct. 47, 50 L.Ed. 2d 69 (1976). A motion to consolidate charges for trial is addressed to the sound discretion of the trial judge and that ruling will not be disturbed on appeal absent an abuse of discretion. *E.g., State v. Bracey*, 303 N.C. 112, 277 S.E. 2d 390 (1981); *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296. If, however, the charges consolidated for trial possess no transactional connection, then the consolidation is improper as a matter of law. *See* G.S. § 15A-926(a).

304 N.C. at 126, 282 S.E. 2d at 452.

In the instant case, the state's evidence tends to show that during the early morning of 16 August 1981, defendant forced Ms. Overby's car off the road in Graham. He then kidnapped Ms. Overby, drove her behind a house, and raped her. Further, on 2 September 1981 between 2:00 a.m. and 4:00 a.m., defendant kidnapped Ms. Small at knifepoint from a telephone booth in Burlington and drove her out into the country. He then forced her to drink two cups of liquor and raped her at knifepoint. Finally, in the early morning hours of 10 September 1981, defendant forced himself into Ms. Ray's car just after she had pulled into a parking place. He forcibly restrained Ms. Ray and unsuccessfully attempted to start her car before running from the scene. While the events occurring on each of these three dates appear to have common characteristics, N.C.G.S. 15A-926 does not allow joinder merely if the offenses are of the same class of crime. While it would have been permissible to join the charges arising out of the crimes committed on 16 August for one trial and those arising from the 2 September incident for another, it was error to join all five charges for a single trial. The events arising on each of the three dates were separate and distinct and not obviously part of a single scheme or plan. *State v. Wilson,* 57 N.C. App. 444, 291 S.E. 2d 830, *disc. rev. denied,* 306 N.C. 563 (1982). *Compare State v. Greene, supra,* 294 N.C. 418, 241 S.E. 2d 662 (rape of two different women within three hours held parts of a single scheme or plan of defendant to satisfy his sexual desires on the afternoon of 3 May 1976). Thus, under the statute it was error to consolidate all five charges against defendant for trial.

However, we have determined that although consolidation of the charges was error, it was not prejudicial error. Evidence of each of these offenses would have been admissible in the separate trials of the others in order to prove the identity of the assailant. Although, generally, evidence of crimes other than the one charged is inadmissible to show the character of the accused or his disposition to commit an offense of the nature of the one charged, such evidence is admissible if it is relevant to show the identity of the perpetrator of the crime charged. *E.g., State v. Leggett,* 305 N.C. 213, 287 S.E. 2d 832 (1982); *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). In each of the instant cases, defendant relied on alibi as a defense, thereby "[making] the ques-

tion of whether defendant was, indeed, the perpetrator the very heart of the case." *State v. Freeman*, 303 N.C. 299, 302, 278 S.E. 2d 207, 208-09 (1981). The crimes occurring on 16 August, 2 September, and 10 September were sufficiently similar to permit evidence of their occurrence to be admissible on the question of the identity of the assailant.

Although in determining whether a defendant has been prejudiced by joinder the test is not whether the evidence at trial in one case would be competent and admissible at the trial of the other, this factor may be considered in determining whether the consolidation was unjust and prejudicial to the defendant. The test to be applied is whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial to the defendant. In so doing we must look to whether defendant was hindered or deprived of his ability to defend one or more of the charges. *State v. Greene*, *supra*, 294 N.C. 418, 241 S.E. 2d 662. Although we hold that the consolidation violated the statute, the record does not support a conclusion that the defendant was thereby unjustly and prejudicially hindered or deprived of his ability to defend one or more of the charges. *Id.*

[3] Defendant next contends that the trial court erred in denying his challenges for cause of prospective jurors Thompson, Butler and McRainey. Defendant argues that each of these jurors had formed an opinion before trial as to his guilt or innocence and therefore ought to have been excused under N.C.G.S. 15A-1212.

Defendant would have us interpret this statute to require dismissal of any juror who has ever formed an opinion as to the guilt or innocence of a defendant. We do not agree. This interpretation would remove all discretion from the trial judge in determining whether the juror could render a fair, impartial, and unbiased judgment. *State v. Wright*, 52 N.C. App. 166, 278 S.E. 2d 579, *disc. rev. denied*, 303 N.C. 319 (1981).

N.C.G.S. 15A-1211(b) requires the trial judge to decide all challenges concerning the competency of jurors. N.C.G.S. 15A-1212 merely lists the various grounds for making challenges to jurors.

The official commentary to N.C.G.S. 15A-1212 contains the following: "To the extent possible the Commission has at-

tempted to *restate* in this Article the rules governing select-
ing and impaneling the jury in a criminal case. This section
incorporates the disqualifications set out in G.S. 9-3 and adds
a number of additional grounds for challenge for cause." (Em-
phasis ours.)

> Thus, N.C.G.S. 15A-1212(6) apparently is a codification of
> the case law which requires that a juror be excused when he
> is, in the trial judge's opinion, unable to render a fair and im-
> partial verdict because of preconceived opinions as to defend-
> ant's guilt or innocence. This interpretation is consistent with
> subsection (9), which permits a challenge to be made on the
> grounds that a juror "[f]or any other cause is unable to
> render a fair and impartial verdict." N.C. Gen. Stat. 15A-
> 1212(9). It seems unlikely that anyone who read or heard
> about a criminal case through the media would not form some
> sort of notion regarding an accused's guilt or innocence. To
> demand dismissal of every prospective juror who had prior
> knowledge of a case because he kept himself informed of cur-
> rent affairs arguably would "require our courts to exclude
> from service those best qualified to hear and deal with
> evidence and to understand instructions upon the law."

*Id.* at 171-72, 278 S.E. 2d at 584-85 (citations omitted).

Defendant's argument is specious at best.

As discussed above, if a prospective juror has stated that he
has an opinion as to how the case should come out, he may serve
if it is established that he can "lay aside his impression or opinion
and render a verdict based on the evidence presented in court."
*Irvin v. Dowd, supra,* 366 U.S. at 723, 6 L.Ed. 2d at 756. *See State
v. Wright, supra,* 52 N.C. App. 166, 278 S.E. 2d 579, *disc. rev.
denied,* 303 N.C. 319. The transcript of jury selection contains the
following dialogue between the prosecutor, Mr. Johnson, and the
jurors about whom defendant complains:

> MR. JOHNSON: If you as you sit there in the box now
> have any opinion about how the cases ought to come out
> based on what you've read, raise your hand.

> Mrs. Butler, you feel that you now have an opinion about
> how it ought to come out?

State v. Corbett

MRS. BUTLER: Yes, I do.

MR. JOHNSON: All right. And Mrs. McRainey.

Anyone else?

Mrs. Thompson.

And I take it there's no one else that feels that they now have an opinion about how the cases ought to come out.

All right. Speaking to Mrs. Butler, Mrs. Thompson, and Mrs. McRainey, let me ask you this then. Do you each understand that a case is supposed to be decided on the evidence that's presented in court?

(Jurors 5, 6, and 9 nod indicating affirmatively.)

MR. JOHNSON: Do you agree with that proposition?

MRS. BUTLER: Yes, sir.

MR. JOHNSON: Do you each understand that one reason for that is that it gives the person accused the opportunity to cross-examine those who are accusing him and that whatever appeared in the paper is not something that's subject to his being able to cross-examine it? Do you understand that?

(Jurors 5, 6, and 9 nod indicating affirmatively.)

MR. JOHNSON: It's not sworn testimony. Do you further understand that no matter how well intentioned some reporter might have been about presenting the case in the paper that he might have gotten some of the facts wrong or he might have misquoted somebody? You understand that?

(Jurors 5, 6, and 9 nod indicating affirmatively.)

MR. JOHNSON: Do you feel then that if the evidence presented in court is different in some respect from what you might have read in the paper that you would base your decision about what the facts are on the evidence as presented or what you might have read?

MRS. THOMPSON: Evidence.

MRS. MCRAINEY: Evidence.

MRS. BUTLER: (Nods indicating affirmatively.)

MR. JOHNSON: Can you keep it separate in your own minds as to what you might have read from what you hear in open court?

MRS. THOMPSON: Yes.

MRS. BUTLER: Yes.

MRS. MCRAINEY: (Nods indicating affirmatively.)

MR. JOHNSON: Will you to your utmost, if you're left to sit on this jury, strive to base your verdicts solely on the evidence as presented in court and not on something you might have read outside the courtroom, understanding the reason for that is that it may be faulty information?

MRS. THOMPSON: Yes.

MRS. BUTLER: Yes.

MRS. MCRAINEY: Yes.

MR. JOHNSON: I take it then that you're—what you're saying is you do not have a fixed opinion as to how the case ought to come out but that you will base your decision solely on the evidence presented in court, is that correct, ladies?

MRS. THOMPSON: Yes.

MRS. BUTLER: Yes.

MRS. MCRAINEY: Yes.

The transcript further contains the following questioning by Mr. Monroe, the defense attorney:

MR. MONROE: You also indicated, I believe, that—in response to Mr. Johnson's questions that you had formed an opinion as to how the case ought to come out—when he first asked you that question—

MRS. THOMPSON: Yes.

MR. MONROE: —based on the newspaper articles you had read? Do you still have an opinion as to how the case ought to come out?

MRS. THOMPSON: No.

MR. MONROE: What caused—

MRS. THOMPSON: Because I haven't heard the evidence.

MR. MONROE: What caused you to change your mind?

MRS. THOMPSON: Well, I think personally in reading these when you sit down and read a newspaper then you form—right off you form your opinion. I think everybody is guilty of that.

MR. MONROE: Uh huh.

MRS. THOMPSON: And—but I think a man is innocent until proven guilty.

MR. MONROE: And you would—

MRS. THOMPSON: And I would definitely listen to the State's evidence. . . .

          . . . .

MR. MONROE: . . . Now then you'll base your verdict on the evidence and not any newspaper articles,—

MRS. THOMPSON: Yes. Yes.

Mr. Monroe then questioned prospective juror Butler:

MR. MONROE: . . . Now you also indicated, I believe, in response to Mr. Johnson's questions that you had formed an opinion as to the guilt or innocence of the defendant based on news accounts you had read. Do you still have an opinion as to his guilt or innocence without having heard any of the evidence?

MRS. BUTLER: I don't believe so.

MR. MONROE: You don't believe so. Do you have some—some doubt in your mind?

MRS. BUTLER: Well, I have some reservations, yes, sir.

MR. MONROE: Um huh. And you would find it hard then to disabuse yourself of anything you might have read about this—about this case, is that correct?

MRS. BUTLER: Well, the things I've read were not—they were kind of after the case.

State v. Corbett

MR. MONROE: Um huh.

MRS. BUTLER: Consideration of the defendant as for regard to be tried in Alamance County again.

MR. MONROE: Um huh.

MRS. BUTLER: Now that's basically all I've read and I have some questions —

MR. MONROE: Um huh.

MRS. BUTLER: — in my mind as to why that was a concern here.

MR. MONROE: Right.

The court then questioned Mrs. Butler.

COURT: Are you able to follow the process required of jurors, as I've explained it a number of times, and make a determination of truth solely from the evidence, disregarding any information you may have heard — had earlier and disregarding any opinion you may have formed from that information earlier? It it [the question] still too long?

MRS. BUTLER: No. Yes, I think I can.

Finally, Mr. Monroe questioned Mrs. McRainey:

MR. MONROE: Yes, . . . . All right. Would it be a fair statement that — to say that before you came today and sat on the jury panel you had formed an opinion as to the guilt or innocence of Mr. Corbett from these news accounts?

MRS. MCRAINEY: Yeah.

MR. MONROE: You had?

MRS. MCRAINEY: Yeah.

MR. MONROE: Do you still have that opinion?

MRS. MCRAINEY: Not that much, no.

MR. MONROE: Why have you changed your mind if you can tell me?

MRS. MCRAINEY: Well, I wasn't being fair. I was reading from the paper rather than listening to him or to —

MR. MONROE: Um huh.

MRS. MCRAINEY: —to the truth I guess.

MR. MONROE: Does that mean that—you say reading—
I'm not trying—

MRS. MCRAINEY: I think—well, I think that I can listen
to both sides and be fair.

. . . .

MR. MONROE: [W]ill you base your verdict solely upon the
evidence you hear in the courtroom and not consider any
newspaper articles?

MRS. MCRAINEY: Oh, no, on—on just what I hear.

Each of these jurors stated without equivocation that she
could set aside her prior opinion and try the cases solely on the
evidence presented in court. We hold that the trial court did not
abuse its discretion in denying defendant's challenges for cause of
these three jurors. *E.g., State v. Wright, supra,* 52 N.C. App. 166,
278 S.E. 2d 579, *disc. rev. denied,* 303 N.C. 319 (1981).

[4] Defendant next contends that the trial court erred in deny-
ing his motion for a change of venue or special venire. Defendant
contends that publicity before and during the trial concerning
Corbett and the charges against him was so inflammatory that an
impartial jury could not have been impaneled from Alamance
County. Defendant observes that a number of prospective jurors
admitted having read news accounts of the charges prior to trial.
Further, prospective jurors Thompson, Butler, and McRainey
stated when questioned during jury selection that they had
formed an opinion as to "how the cases ought to come out."
Defendant concludes that this demonstrates that it was reason-
ably likely that the jurors hearing his trial would base their ver-
dicts upon information to which they were exposed before trial
rather than evidence presented in court. Thus, the trial court
erred in failing to grant his motion for a change of venue or
special venire.

N.C.G.S. 15A-957 provides:

§ 15A-957. Motion for change of venue.—If, upon motion
of the defendant, the court determines that there exists in

the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:

(1) Transfer the proceeding to another county in the judicial district or to another county in an adjoining judicial district, or

(2) Order a special venire under the terms of G.S. 15A-958.

       The procedure for change of venue is in accordance with the provisions of Article 3 of this Chapter, Venue.

Defendant has the burden of proving so great a prejudice that he cannot obtain a fair and impartial trial. *State v. Richardson,* 308 N.C. 470, 302 S.E. 2d 799 (1983); *State v. McDougald,* 38 N.C. App. 244, 248 S.E. 2d 72 (1978), *disc. rev. denied,* 296 N.C. 413 (1979). He must establish that prospective jurors in his case were reasonably likely to base their verdict upon conclusions induced by outside influences rather than upon conclusions induced solely by evidence and arguments presented in court. *Sheppard v. Maxwell,* 384 U.S. 333, 16 L.Ed. 2d 600 (1966); *State v. Boykin,* 291 N.C. 264, 229 S.E. 2d 914 (1976); *State v. McDougald, supra.* The determination whether the defendant has met his burden of proof on a motion for change of venue rests in the sound discretion of the trial court. Absent a showing of gross abuse of discretion, its ruling will not be reversed. *State v. Richardson, supra; State v. Matthews,* 295 N.C. 265, 245 S.E. 2d 727 (1978), *cert. denied,* 439 U.S. 1128 (1979); *State v. McDougald, supra.*

       We have examined carefully the newspaper clippings defendant has alleged were so inflammatory as to prevent him from receiving a fair and impartial trial. We find them not to be inflammatory and hold that they did not impede defendant from receiving a fair and impartial trial. *See State v. Dobbins,* 306 N.C. 342, 293 S.E. 2d 162 (1982). As discussed above, the jurors who initially stated that before trial they had formed an opinion as to defendant's guilt or innocence declared upon further questioning that they would base their conclusions solely upon evidence and arguments presented in court. Defendant has failed to establish that the trial court abused its discretion in denying his motion for a change of venue or special venire. Defendant's assignment of error is overruled.

[5]   Defendant next contends that the trial court erred in deny-ing his motion to suppress testimony concerning Sheila Ray's view of a pretrial lineup in which Ms. Ray identified defendant as her assailant. Defendant contends that this identification pro-cedure was tainted because five days before the lineup occurred Ms. Ray saw a photograph of defendant in the Burlington Times-News. Further, before viewing the lineup Ms. Ray was told that a man named Frederick Corbett would be in the lineup. Defendant also argues that because the pretrial identification procedure was tainted, the trial court erred in denying his motion to suppress Ms. Ray's identification of him in court as her assailant.

Upon the making of these motions, a voir dire was held to determine the basis of Ms. Ray's identification of defendant as her assailant. At the conclusion of the voir dire, the court found that

[Ms. Ray's] identification of the defendant at the police line-up was based on her recollection of his appearance at the time of the assault independent of her seeing his photograph in a newspaper or of any other circumstances existing at the time of the lineup, that her opportunity to observe the de-fendant for an extended time at the assault did not lead to her misidentification.

Even though the newspaper photograph of defendant may have been suggestive, testimony concerning the pretrial lineup would have been inadmissible only if all of the circumstances in-dicate that Ms. Ray's view of the photograph resulted in a very substantial likelihood of subsequent irreparable misidentification of defendant as her assailant. *See Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247 (1968); *State v. Harris,* 308 N.C. 159, 301 S.E. 2d 91 (1983).

The factors to be considered in evaluating the likelihood of ir-reparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of cer-tainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confronta-tion. *Manson v. Brathwaite,* 432 U.S. 98, 53 L.Ed. 2d 140 (1976); *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401 (1972).

*See, e.g., State v. Thompson,* 303 N.C. 169, 277 S.E. 2d 431 (1981).

*State v. Harris, supra,* 308 N.C. at 164, 301 S.E. 2d at 95.

The evidence in the present case tends to show that Ms. Ray observed her assailant's face in adequate light for at least five minutes during the twenty minutes he confined her. Ms. Ray's testimony reveals that at the time of the kidnapping she was paying sufficient attention to see and remember her assailant. Ms. Ray's description of her assailant as being somewhat taller and heavier than defendant was at the time of the lineup was not so different as to indicate a very substantial likelihood of a misidentification. Ms. Ray unequivocally identified defendant during the lineup as her assailant. The crime occurred about one month before the lineup and three months before trial. We find that the trial court's finding that Ms. Ray's view of the newspaper photograph did not give rise to a very substantial likelihood of irreparable misidentification was supported by competent evidence and thus is binding upon this Court. *E.g., State v. White,* 307 N.C. 42, 296 S.E. 2d 267 (1983). The trial court did not err in denying defendant's motion to suppress testimony concerning the pretrial lineup.

In addition, we hold that the trial court did not err in allowing Ms. Ray to identify defendant in court as her assailant. Even assuming arguendo that the newspaper photograph could be found suggestive, we find more than adequate evidence in the record to support the trial court's decision to hold Ms. Ray's in-court identification as being of independent origin:

> The factors to be considered in determining whether the in-court identification of defendant is of independent origin include the opportunity of the witness to view the accused at the time of the crime, the witness' degree of attention at the time, the accuracy of his prior description of the accused, the witness' level of certainty in identifying the accused at the time of the confrontation, and the time between the crime and the confrontation.

*State v. Thompson,* 303 N.C. 169, 172, 277 S.E. 2d 431, 434 (1981). Considering Ms. Ray's in-court identification of defendant in light of all the circumstances mentioned earlier, we have determined

that this identification of Corbett was based on Ms. Ray's observation of him on the day of the assaults. The trial court did not err in denying defendant's motion to suppress Ms. Ray's identification of defendant as her assailant.

[6] Defendant next argues that the trial court erred in denying his motions to suppress identification testimony of Barbara Small. As in the case in which defendant was charged with kidnapping Ms. Ray, a voir dire to determine the admissibility of identification evidence was held in the cases in which defendant was charged with kidnapping and raping Ms. Small. At the conclusion of this voir dire, the trial court ruled that Ms. Small's identification testimony and her in-court identification of defendant would be admissible.

Defendant does not argue, nor does the record reveal, that there was anything suggestive about the pretrial identification procedures in which Ms. Small participated. Rather, defendant contends that the circumstances under which Ms. Small observed her assailant at the time of the crimes were such that her identifications of defendant from the photographic display and later in court were inherently incredible. *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967) (witness's identification of defendant inherently incredible when based on observation of man at scene of crime at night and from distance of 286 feet). Defendant relies on the allegation that within twenty-four hours of the time of her kidnapping Ms. Small had consumed several beers and may have been feeling the effects of a dose of LSD she had taken the day before the assault. Defendant argues that when she was assaulted Ms. Small's senses must have been so impaired that she could not formulate or remember an impression of the physical features of her assailant.

Identification evidence is not inherently incredible if "there is a reasonable possibility of observation sufficient to permit subsequent identification." *Id.* at 732, 154 S.E. 2d at 906. Where such a possibility exists, the credibility of the witness and the weight to be given to his identification testimony is for the jury to decide. *E.g., id.; State v. Turner*, 305 N.C. 356, 289 S.E. 2d 368 (1982). In the present case, Ms. Small testified that she had had the opportunity to observe defendant's face on two occasions: first, when he abducted her from the telephone booth and forced

her into his car, and second, when she later tried to get out of the car. Ms. Small also paid attention to her assailant's voice and later based her identification of defendant in a show-up lineup on both his observable appearance and the sound of his voice after all those in the lineup were directed to speak a few words. We hold that this evidence supports the finding of a reasonable possibility that Ms. Small sufficiently observed her assailant at the time of the crimes to permit subsequent identification. Whether Ms. Small's faculties of perception were impaired, and the degree to which they were, if any, was an appropriate subject for cross-examination. The trial court did not err in denying defendant's motions to suppress testimony concerning Ms. Small's identification of defendant before trial from a photographic display and from a pretrial show-up. In addition, the trial court did not err in permitting Ms. Small to identify defendant in court as being her assailant.

[7]   Defendant next contends that the trial court erred in denying his motions to dismiss the charge accusing him of rape in the first degree of Ms. Small. Defendant argues that the state failed to prove beyond a reasonable doubt that Ms. Small did not consent to having intercourse with him.

N.C.G.S. 14-27.2(a)(2)(a) provides as follows:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

. . . .

(2) With another person by force and against the will of the other person, and:

a. Employs or displays a dangerous weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon;
. . .

The victim's consent is a defense available to defendant. The state does, however, have the burden of proving that the intercourse was achieved by force and against the victim's will. In ruling on a motion to dismiss based upon insufficiency of the evidence, all of the evidence must be considered in the light most favorable to the state. *E.g., State v. Jackson,* 309 N.C. 26, 305

S.E. 2d 703 (1983); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). If there is substantial evidence of each element of the offense, the motion to dismiss must be denied. *Id.*

In the present case, the evidence most favorable to the state tends to show that on 2 September 1981 between 2:00 and 4:00 a.m., Ms. Small was making a telephone call in a telephone booth at the corner of Trollinger and Webb streets in Burlington. Defendant drove up to the phone booth in a white automobile, grabbed Ms. Small, and forced her into his car. Defendant then forced Ms. Small to put her head down, and they drove to Peele Street. When Ms. Small attempted to get out of the car, defendant grabbed her and pulled her back in. He blindfolded her and made her place her head on his lap; he then drove off, holding a knife to Ms. Small's throat. Defendant drove to a wooded area where he forced Ms. Small to drink two cups of liquor. Still holding the knife, defendant made Ms. Small crawl into the backseat of the car. Defendant got into the backseat, held the knife to Ms. Small's throat, and forced her to remove her clothing. Defendant then undressed himself and had forcible intercourse with Ms. Small. Ms. Small testified that during this time she "was wanting to scream" and was crying and told defendant "please don't hurt me." She testified that she had wanted to get out, but defendant kept telling her to shut up. After raping Ms. Small, defendant told her to put her clothes back on and get out of the car. When she did so, defendant drove away. The evidence is ample to support a finding of each element of the crime of rape. *State v. Felton*, 283 N.C. 368, 196 S.E. 2d 239 (1973). We hold that the trial court did not err in denying defendant's motions to dismiss the charge of rape in the first degree of Barbara Small.

[8] Defendant next argues that the trial court erred in excluding testimony of Detective Cozart to the effect that when he spoke with Ms. Small after her assaults he noted some "problems" or inconsistencies with her account of the events. Defendant contends that Detective Cozart's impression of Ms. Small's account was relevant to Ms. Small's credibility and thus ought to have been allowed before the jury.

Both Ms. Small and Detective Cozart were witnesses for the state whom defendant cross-examined extensively. Any inconsistencies in Ms. Small's accounts of the kidnapping and rape

were before the jury for its consideration. As the fact finder, the jury was able to determine whether any inconsistencies existed in Ms. Small's testimony and to weigh these appropriately. Detective Cozart's opinion or conclusion whether there were inconsistencies in Ms. Small's statement to him was properly excluded. *E.g., State v. Miller*, 302 N.C. 572, 276 S.E. 2d 417 (1981); *State v. McLaughlin*, 126 N.C. 1080, 35 S.E. 1037 (1900).

[9]   Next, defendant argues that the trial court erred in failing to charge the jury on rape in the second degree in the case in which defendant was accused of rape in the first degree of Ms. Small. One difference between rape in the first degree under N.C.G.S. 14-27.2(a)(2)(a) and rape in the second degree under N.C.G.S. 14-27.3 is that in the former but not in the latter a deadly weapon must have been used to effectuate the rape. Defendant contends that the evidence presented would have permitted the jury to conclude that Corbett did not use the knife he held in order to rape Ms. Small.

Upon examination of the transcript and record, we find no evidence that would have entitled defendant to an instruction on rape in the second degree. *Cf. State v. Strickland*, 307 N.C. 274, 298 S.E. 2d 645 (1983); *State v. Jones*, 304 N.C. 323, 283 S.E. 2d 483 (1981). All of the evidence shows that defendant used the knife, a deadly weapon, when raping Ms. Small. The trial court did not err in failing to submit the lesser offense of rape in the second degree to the jury in the Barbara Small rape case.

[10]   Defendant next argues that the trial court erred when it instructed the jury that "[i]f you find the facts to be as the defendant's evidence tends to show them, then you are to acquit the defendant." Defendant contends that he is entitled to a new trial because this statement improperly shifted to him a burden of proving his innocence of the charges against him. This argument is untenable.

A jury charge must be read in context and in its entirety. *E.g., State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335 (1983). If the charge as a whole is correct and presents the law fairly and clearly to the jury, merely technical errors or slight misstatements will not mandate retrial. *E.g., State v. Tilley*, 292 N.C. 132, 232 S.E. 2d 433 (1977); *State v. Slade*, 291 N.C. 275, 229 S.E. 2d 921 (1976). We have reviewed the jury charge in context and find that

the trial court emphatically placed the burden of proving defendant's guilt beyond reasonable doubt on the state. The court did not place the burden of proving his innocence on the defendant.

Finally, defendant claims that during defendant's sentencing hearing the trial court improperly considered evidence of crimes of which he had been previously acquitted. While it is true that such evidence was presented during the sentencing hearing, there is no indication that the trial court considered it when sentencing defendant. The trial court was aware that defendant had been acquitted of the charges at issue and did not sentence defendant under an erroneous assumption as to his criminal record. *See State v. Spicer,* 299 N.C. 309, 261 S.E. 2d 893 (1980). Defendant received the presumptive sentence for each of the charges of which he was convicted. Defendant's assignment of error is without merit.

For reasons stated above, we find that defendant received a fair trial, free from prejudicial error.

No error.

Justice EXUM dissenting.

Believing the trial court erred in denying defendant's motion for change of venue and challenges for cause of jurors Thompson, Butler and McRainey, I dissent.

My disagreement with the majority stems from my belief that the extensive and prejudicial publicity involved in this case renders it manifestly impossible for us to say that defendant received a fair trial. I find both the prejudicial nature of the publicity and its magnitude significant. I also believe the denial of the challenges for cause clearly violated our statute on the subject. N.C. Gen. Stat. § 15A-1212(6) (1978).

Without stating the articles' contents, the majority blithely concludes on the change of venue issue, "We have examined carefully the newspaper clippings defendant has alleged were so inflammatory as to prevent him from receiving a fair and impartial trial. We find them not to be inflammatory and hold that they did not impede defendant from receiving a fair and impartial trial." The newspaper articles complained of are, indeed, in-

flammatory. Furthermore, they had been read by enough of the prospective jurors that, even after defendant exhausted his peremptory challenges, eight of the twelve jurors who tried him had been exposed to the publicity.

The newspaper articles did not merely report the fact that defendant was charged in these crimes. Defendant has brought forward, either in the record on appeal or as separate exhibits, fourteen articles concerning the defendant Corbett. These articles appeared in local papers having large general circulations in Alamance County from 11 July 1981 through 3 December 1981, just four days before the instant trial began. Among other things, many articles flaunt defendant's prior acquittal of a similar offense some six months before this trial. A follow-up article criticizes the jury's performance in that case, citing the prosecutor's "surprise" with the verdict and an admission by one of the jurors that the jury had made a mistake.

The 11 July 1981 article is headlined "Not Guilty is Verdict in Rape, Kidnap Trial." The article reports that Corbett was acquitted on charges of kidnapping and raping a seventeen-year-old Altamahaw woman on a northern Alamance County road during the early morning hours. On 19 November 1981, less than a month before defendant's trial, the most prominent article on the front page of *The Alamance News* was headlined, "Are Jurors What is Wrong with the Courts?" This article contains a lengthy account of Corbett's earlier acquittal on the unrelated kidnapping and rape charges. The article quotes the Assistant District Attorney, William Johnson, who prosecuted defendant in the instant cases, as saying that he was surprised the jury found Corbett not guilty in July. "Let's just say I was astonished," he said. "I expect that if I talked to some of those people [the jurors] it wouldn't have been a nice conversation." Johnson continued: "My main feeling is that it's probably a situation where the jury felt that the prosecuting witness didn't make a credible witness," adding that a polygraph test proved the truth of the victim's testimony but that this evidence was not admissible. The lead paragraphs of this article read:

Are jurors what is wrong in the court system?

This is a common question voiced by many persons in view of trials which result in the acquittal of a defendant and

his being set free in light of substantial evidence indicating his or her guilt.

On 3 December 1981 another featured article in *The Alamance News* appeared, headlined "Jurors Defend 'Not Guilty' Corbett Verdict." Prominent in this article were the names and addresses of the jurors who had earlier acquitted Corbett. The article made clear that the newspaper had tried to reach all twelve jurors to get their versions of the not guilty verdict. The jurors were quoted extensively in the article as they attempted to defend their verdict for the newspaper.

Of the eight articles which appeared in September and October 1981 (the latest on 27 October 1981) and dealt with the present charges against defendant, all except one prominently mentioned defendant's earlier acquittal in an unrelated rape and kidnapping case. Typical of the references in these articles is one contained in the 27 October 1981 edition of *The Burlington Daily Times-News*. This article dealt essentially with Corbett's assertion that he was suffering from "Vietnam Veterans' Syndrome" and was moving for psychiatric evaluation to determine his competency to stand trial. The article said:

> Monday's motion apparently marks the first time Corbett has claimed a mental illness after being charged with a serious crime. In 1979, he was tried on a charge of assault with a deadly weapon, and was found innocent. Earlier this year, he was tried on charges of aggravated kidnapping and second degree rape, with the trial ending in a deadlock.

> In a second trial he was found innocent. In each of the three trials, neither Corbett nor his attorney made mention of any mental problems, court records show.

Of greater concern to me is the newspaper article appearing on 19 November 1981 shortly before defendant's trial on the present charges, criticizing the jury system and, in particular, the jury which had acquitted Corbett of similar charges in July. This article was then followed by one in which the jurors in the earlier Corbett case were called upon individually to defend their verdict, their names and addresses being prominently published. Because of the nature and timing of these articles in *The Alamance News*, it appears the paper might indeed have wanted to intimidate the jurors in defendant's upcoming trial into returning a guilty verdict.

State v. Corbett

An important factor in analyzing the need for a change of venue is, of course, the extent to which the pretrial publicity has infected the venire. *Irvin v. Dowd*, 366 U.S. 717 (1961); *State v. Jerrett*, 309 N.C. 239 (1983). During the jury selection procedure, ten of the first twelve jurors called into the box indicated that they had read about the Corbett case in the local newspapers. The state elected to keep all of these jurors on the panel, excusing only one of the two jurors who had not read the articles. The excused juror's replacement, Mr. Little, said he had been following the case pretty closely in the newspapers and that, based on what he had read about it, the defendant was "guilty as far as I'm concerned." After Mr. Little indicated that he could give the defendant a fair trial "if they put a pretty good case for him," the state accepted him and passed the jury to defendant. Of the jurors passed to defendant, McRainey, Thompson, and Butler said they had formed an opinion on the question of defendant's guilt from news accounts which they had read. Juror Williams indicated she had read all of the newspaper articles and, when asked whether she had formed an opinion as to Corbett's guilt, replied, "Yeah, I probably thought he was." Other jurors indicated that while they had read one or more of the articles about Corbett, they had formed no opinion regarding his guilt.

After defendant completed his challenges, six replacement jurors were tendered to the state. Of these, four had read newspaper articles about the case. One said, "I've heard a lot of comment about it. I've seen it on the TV and heard it on the radio and read it in the paper." Of the twelve jurors who actually sat and determined these charges against defendant, eight of them had read one or more of the news articles appearing about the case. Defendant exhausted his peremptory challenges and sought unsuccessfully to challenge two additional jurors.

Thus, not only was much of the pretrial publicity inflammatory and intimidating to prospective jurors (particularly the articles appearing within several weeks of defendant's trial), but this pretrial publicity also permeated the jury box. A majority of the jury had been exposed to this adverse pretrial publicity. Defendant was unable, through the exercise of his peremptory challenges, to select a jury none of whom had been exposed to the publicity. We held in *State v. Jerrett*, 309 N.C. 239 (1983) that, under similar circumstances, it was error warranting a new trial

not to allow defendant's motion for a change of venue. While the county involved in *Jerrett*, Alleghany, was smaller and generally more rural than Alamance, the difference was not so substantial that Alamance can be characterized as a "large urban area." *See Jerrett*, 309 N.C. at 257, 307 S.E. 2d at 348. Even if the nature of the two counties is somewhat different, the publicity in *Jerrett* was generated largely by word-of-mouth. Here, it was by newspapers, generally circulated throughout the county, and local television and radio broadcasts. Likely, the dissemination of this information reached more people than did the oral statements in *Jerrett*. The most important circumstances common to both cases is that the pretrial publicity was strongly inimical to a fair trial and this publicity had permeated the jury box.

Further, in *Jerrett*, as here, the jurors were examined on *voir dire* collectively so that all prospective jurors heard the damaging responses made by other prospective jurors. In *Jerrett*, we stressed this collective *voir dire* as an important circumstance to be considered on the change of venue question. We concluded that because Alleghany County was "infected with prejudice against" the defendant and the jury *voir dire* revealed that the prejudice had permeated the jury box, defendant "fulfilled his burden of showing that a reasonable likelihood existed that he would not receive a fair trial before an Alleghany County jury." *Jerrett*, 309 N.C. at 258, 307 S.E. 2d at 349.

I think we should conclude here that prejudicial and intimidating pretrial publicity had been circulated throughout the county and the jury *voir dire* demonstrated that it permeated the jury box. Therefore defendant has shown a reasonable likelihood that he could not receive a fair trial before an Alamance County jury in December 1981. To deny defendant a change of venue was error.

Jurors McRainey, Butler and Thompson said their exposure to pretrial publicity caused them to form an opinion about defendant's guilt. It was error, therefore, not to sustain defendant's challenges for cause to these jurors. N.C. Gen. Stat. § 15A-1212(6) (1978). The majority reasons that since each of these jurors ultimately stated that they would not let their previously formed opinions intrude on their consideration of the case, the trial judge

---

State v. Corbett

---

properly denied the challenges for cause. The majority relies on the statement from *Irvin v. Dowd*, 366 U.S. 717, 723 (1961), that if a juror "can lay aside his impression or opinion and render a verdict based on the evidence presented in court," defendant has not been denied a fair trial on the basis that the juror had previously formed an opinion.

*Irvin* was a habeas corpus proceeding challenging Irvin's state court conviction of murder and death sentence. The question was whether Irvin's conviction violated the Due Process Clause of the Fourteenth Amendment. The Court held that the Due Process Clause did not require that jurors be totally ignorant of the case nor that they had never formed any preconceived notion as to the accused's guilt. It only required that the juror be able to lay aside such notions. The Court went on to say that "the adoption of such a rule . . . 'cannot foreclose inquiry as to whether, in a given case, the application of that rule works a deprivation of the prisoner's life or liberty without due process of law.'" The Court then concluded that the extensive pretrial publicity for six or seven months preceding Irvin's trial coupled with the difficulty of obtaining jurors who had no preconceived notions about Irvin's guilt (eight out of the twelve jurors who ultimately sat had once formed an opinion that Irvin was guilty) resulted in a denial of due process in Irvin's case.

Rather than supporting the majority's position, the holding in *Irvin* is some authority for giving defendant a new trial on due process grounds. At best *Irvin* has no application to the challenge for cause issue. It is a due process case.

Defendant's contention here is the trial judge's denial of his challenges for cause to jurors Thompson, Butler and McRainey, violated our statute, N.C. Gen. Stat. § 15A-1212, because each of these jurors had formed an opinion as to defendant's guilt. The statute provides:

A challenge for cause to an individual juror may be made by any party on the ground that the juror:

. . . .

(6) Has formed or expressed an opinion as to the guilt or innocence of the defendant. It is improper for a party

to elicit whether the opinion formed is favorable or adverse to the defendant.

The statute does not permit denial of a challenge for cause of a juror who has once formed an opinion on the ground that the juror says at trial that he or she can lay it aside. The statute is clear, unambiguous, and not susceptible to interpretation on this point. It says, without equivocation, that a juror who has either "formed or expressed an opinion as to the guilt or innocence of the defendant" is subject to a challenge for cause. When the court finds no error in the denial of challenges for cause if the jurors can lay aside their opinions, it usurps the legislative function by rewriting the statute. Jurors Thompson, Butler and McRainey each admitted that they had formed an opinion about defendant's guilt. Defendant's challenge for cause to these jurors should have been allowed.

Defendant then challenged each of these jurors peremptorily. He exhausted the peremptory challenges available to him. He renewed his challenges for cause after he had peremptorily challenged the three jurors in question and the renewed challenges were denied. The improper denials, therefore, of defendant's challenges for cause of these three jurors warrants a new trial. N.C. Gen. Stat. § 15A-1214(h) & (i).

Evidence of defendant's guilt is strong. Despite what this Court may believe about his guilt, it has an obligation to afford him a fair trial before an impartial jury. Specifically, we are obligated as regards his trial, to protect him, if we can, from the clamor of an irate newspaper bent on seeing him convicted. The Court fails to meet these obligations when, under the circumstances here, it finds no error in the denial of defendant's change of venue motion and his challenges for cause of those jurors who before his trial had formed an opinion about his guilt.

Justice FRYE dissenting.

For the reasons stated in *State v. Jerrett*, No. 228A82 (filed 27 September 1983), and in the dissenting opinion herein by Justice Exum, I dissent from that part of the majority opinion which holds that the trial court did not commit prejudicial error in denying defendant's motion for a change of venue or special venire. I vote to give defendant a new trial.