STATE OF NORTH CAROLINA v. ALEXANDER WHITE

No. 154A83

(Filed 5 June 1984)

### 1. Criminal Law § 15.1— denial of motion for change of venue—no error

The trial court did not abuse its discretion in denying defendant's motion for a change of venue or in the alternative a special jury venire, and for an individual *voir dire* of the jury on the grounds of "undue, prejudicial and inflammatory publicity concerning the defendant and matters inadmissible at trial, the widespread reputation of the prosecuting witness in the small community of Burgaw and the general occurrence of conversation among the population about the alleged crimes." The two local newspapers each printed *one* story about the crimes, both appearing five months prior to trial; defendant did not contend in his brief that these articles were inflammatory or not factual; although the State conceded that there was pervasive word-of-mouth publicity in Pender County regarding the crime, defendant called thirteen witnesses, none of whom testified that the defendant could not get a fair trial in Pender County; and mere exposure to publicity concerning a case, be it through mass media or general conversation, does not of itself render a prospective juror biased or establish that he has preconceived opinions about the case.

### 2. Constitutional Law § 62— denial of individual voir dire of prospective jurors—no abuse of discretion

The trial court did not abuse its discretion in denying an individual *voir dire* of prospective jurors in a prosecution for first-degree rape where the venue hearing evidence failed to support the claim of identifiable prejudice and where all jurors selected to hear defendant's case affirmatively stated that they had no preconceived opinions about the case and could give defendant a fair trial based only on evidence presented in court.

### 3. Criminal Law § 66.20— in-court identification—findings on voir dire supported by evidence

The trial court's findings on *voir dire* to determine the competency and admissibility of the prosecuting witness' in-court identification, where the prosecuting witness had previously failed to make a positive identification of the defendant during a photographic or physical lineup, were supported by competent evidence, and were conclusive on appeal.

### 4. Searches and Seizures § 11— search and seizure of vehicle proper

A trial court properly found that the stop and detention of defendant did not violate any of defendant's constitutional rights, and that the search incident to the arrest was valid where the evidence tended to show that a police sergeant on routine patrol observed defendant parking in a no parking area; the sergeant drove past defendant and made eye contact with him; the officer was of the opinion that the defendant was intoxicated and he drove to a position where he could observe defendant and possibly follow him to determine whether he was in fact intoxicated; defendant drove away followed by the of-

State v. White

ficer; when defendant failed to respond to the blue light, the sergeant used his siren to stop him; defendant did not have his operator's license; and since the vehicle was stolen, defendant presented no evidence showing any legitimate property or possessory interest in the automobile.

APPEAL by defendant from a judgment of *Judge Elbert S. Peel, Jr.,* entered at the 13 December 1982 Criminal Session of PENDER Superior Court, imposing a life sentence. Defendant's motion to bypass the Court of Appeals in the companion cases in which a lesser sentence was given, was allowed 18 October 1983.

On 7 June 1982, Lena McKoy, a seventy-nine-year-old widow, lived alone near Burgaw, North Carolina. That Sunday evening when she went to bed, all of the windows and doors to her house were locked. At about dawn, she awoke to find a black male standing over her pointing a pistol in her face. He asked her for "the rest of her money." The man had broken a kitchen window to gain entry and had apparently already removed the cash from her pocketbook. Upon being forced out of bed with the gun still in her face, Mrs. McKoy retrieved an envelope from a chest of drawers in her bedroom and gave it to the intruder. The envelope had "Cooperative Savings and Loan" printed on it and contained seven to eight hundred dollars cash in twenty dollar bills.

After putting that money in his pocket, the man began to beat Mrs. McKoy about her face and head with his fists. He tied her up with a telephone cord and a cord from an electric dryer and then he began to choke her with his hands and beat her on the shoulders. During this time, he also grabbed her wedding ring off her finger. The assailant donned a pair of Mrs. McKoy's working gloves, which were adorned with a floral pattern, and ransacked her house. He returned, hit her again, re-tied her with some stockings as she lay on her back on the floor and then raped her. After intercourse, he pulled two mattresses over the woman and left.

Mrs. McKoy eventually managed to free herself and run out to the highway for help. She later discovered that, in addition to the money and ring taken, a toaster oven and some silver coins were missing. Mrs. McKoy was hospitalized for two weeks for serious injuries including a broken jaw, bronchial tube damage and pain which persisted to the day of the trial.

On 12 June 1982, defendant was stopped in the vehicle he was driving by the police. Defendant was arrested and placed in custody after it was discovered that he was driving without a license. Moments later, a routine check revealed that the vehicle was stolen. A subsequent search of defendant's person disclosed his possession of over four hundred dollars cash in twenty dollar bills. A search of the vehicle resulted in the discovery of a black shaving kit containing a gun and a pair of white gloves with flowers on them.

The next day members of the Pender County Sheriff's Department questioned defendant's friend, Patricia Frederick, about certain items missing from Mrs. McKoy's house. She admitted knowing the whereabouts of a toaster oven and assisted them in retrieving it. Subsequently, defendant was indicted and tried upon charges of first-degree rape, robbery with a dangerous weapon, felonious breaking or entering and larceny and assault inflicting serious injury.

At trial, Mrs. McKoy identified the gloves and toaster oven as her own. She also made an in-court identification of defendant as her assailant. According to an investigator from the Sheriff's Department, however, this was the first time Mrs. McKoy had positively identified the defendant as the criminal perpetrator, as compared to unsuccessful or ambiguous pretrial physical and photographic lineups.

Other evidence adduced at trial by the State showed that defendant's fingerprints were on a Cooperative Savings and Loan envelope found under the mattresses on Mrs. McKoy's bedroom floor, and that his tennis shoes "could have made" the footwear impression on another envelope found on her floor. A forensic serologist also testified that semen found on Mrs. McKoy's underwear matched defendant's blood group type, as well as that of thirty-one percent of the male population.

Defendant presented no evidence. The jury found defendant guilty as charged in all cases, and the trial court sentenced him to life imprisonment, plus a consecutive term of forty years.

*Rufus L. Edmisten, Attorney General, by Harry H. Harkins, Jr., Assistant Attorney General, for the State.*

*James L. Nelson and Mary E. Lee, for defendant appellant.*

COPELAND, Justice.

Defendant first contends that the trial court's erroneous denial of his motions for a change of venue or in the alternative a special jury venire, and for an individual *voir dire* of the jury prejudiced his right to a fair trial by an impartial jury.

[1] Defendant filed a pretrial motion for a change of venue based upon the grounds of "undue, prejudicial and inflammatory publicity concerning the defendant and matters inadmissible at trial, the widespread reputation of the prosecuting witness in the small community of Burgaw and the general occurrence of conversation among the population about the alleged crimes." Defendant's motion for a special jury venire was made orally. At the evidentiary hearing, defendant elicited testimony from thirteen witnesses.

Recently, this Court has considered cases raising the issue of when pretrial publicity requires a change of venue or special venire. *State v. Corbett,* 309 N.C. 382, 307 S.E. 2d 139 (1983); *State v. Jerrett,* 309 N.C. 239, 307 S.E. 2d 339 (1983); *State v. Richardson,* 308 N.C. 470, 302 S.E. 2d 799 (1983). Decisions on a motion for a change of venue, or for a special venire, remain within the sound discretion of the trial judge and will not be disturbed unless a gross abuse of discretion is shown. *Corbett,* 309 N.C. at 396, 307 S.E. 2d at 148. This Court has consistently enunciated the well-established rule that the defendant bears the burden of proving that pretrial publicity precludes him from receiving a fair and impartial trial. *Id.; Jerrett* at 251, 307 S.E. 2d at 347. The defendant "must establish that prospective jurors in his case were reasonably likely to base their verdict upon conclusions induced by outside influences rather than upon conclusions induced solely by evidence and arguments presented in court." (Citations omitted.) *Corbett* at 396, 307 S.E. 2d at 148.

At the pretrial hearing on the venue and venire motions, defendant elicited testimony which tended to support the following facts. The area in which the victim lived was a rural traditional community. She and her family were "well known" and "highly regarded." Two articles concerning the arrest of the defendant were published in the two local weekly newspapers. A great deal of conversation and concern had been generated as a result of the criminal incidents. In short, the defendant contends that not only did substantial adverse emotions and opinions exist

in the community against the accused due to the "inflammatory and heinous nature of the alleged crime," but also there had been "unusual and pervasive word-of-mouth publicity about the incident."

We have carefully reviewed the transcript of the hearing on the venue and venire motions and conclude that the trial court did not abuse its discretion in denying defendant's motions. With regard to the pretrial media publicity, we note that the two local newspapers each printed *one* story about the crime, both appearing five months prior to trial. Defendant does not contend in his brief that these articles were inflammatory or not factual, and since we do not have those articles before us, we must presume them to be non-prejudicial publicity. Further, the State concedes that there existed pervasive word-of-mouth publicity in Pender County regarding this crime. However, in the instant case, defendant called thirteen witnesses, none of whom testified that the defendant could not get a fair trial in Pender County. Mere exposure to publicity concerning a case, be it through mass media or general conversation, does not of itself render a prospective juror biased or establish that he has preconceived opinions about the case. *See: Irvin v. Dowd,* 366 U.S. 717, 6 L.Ed. 2d 751 (1961). We believe the evidence adduced at the pretrial hearing did not support defendant's contention that he could not receive a fair trial.

[2] Defendant also challenges the trial court's refusal to allow an individual *voir dire* of prospective jurors in light of the testimony of the witnesses at the venue hearing. Based upon our holding above that the venue hearing evidence failed to support the claim of identifiable prejudice, we conclude that the trial court did not abuse its discretion in denying an individual *voir dire* of the prospective jurors. Furthermore, the record of the *voir dire* proceedings reveals that of the 42 prospective jurors examined, only nine knew or knew of Mrs. McKoy or her family. No person who knew the victim or her family was seated on the jury. Three jurors had heard nothing about the case. Five other jurors had only read an article in the paper. One juror had discussed the article with his wife, while another juror was vaguely familiar with the case through the newspaper article and her relatives who knew the victim. Two jurors were not questioned at all regarding their exposure to publicity about the case. But the

most significant factor is that each juror selected to hear defendant's case affirmatively stated that they had no preconceived opinions about the case and could give defendant a fair trial based only on evidence presented in court. In sum, defendant has failed to show how he was actually prejudiced by the jury selection process. Defendant's first assignment of error is overruled.

[3]  In defendant's next assignment of error, he argues that the trial court erred in denying his motion to suppress or limit the victim's in-court identification testimony. This motion was premised upon the fact that Mrs. McKoy had previously failed to make a positive identification of the defendant during either a photographic or physical lineup.

Judge Peel conducted a thorough *voir dire* hearing and made detailed findings of facts. In accordance with the standard to determine reliability of an identification, as enunciated in *State v. Clark*, 301 N.C. 176, 270 S.E. 2d 425 (1980), Judge Peel found that the victim had ample time, lighting and vision to carefully observe her assailant. Mrs. McKoy unequivocally testified that her identification was based on her observation of the perpetrator on the morning of 7 June 1982. The trial court concluded, based on its findings of fact, that Mrs. McKoy's in-court identification was of independent origin and was properly admissible. When, as in the case *sub judice*, the trial court's findings are supported by competent evidence, they are conclusive on appeal. *State v. Tann*, 302 N.C. 89, 273 S.E. 2d 720 (1981). We find no error in the introduction of the identification evidence.

[4]  Defendant finally asserts that the evidence seized from his person and from the vehicle which he was driving should have been excluded at trial, because the searches violated his Fourth Amendment rights. After a duly conducted *voir dire* hearing at trial, Judge Peel concluded that the searches were lawful and reasonable, and that the items obtained as a result of the searches were properly admissible into evidence. We agree with the trial court's conclusions.

First, defendant claims that he was illegally and unconstitutionally stopped, and subsequently arrested for not having his operator's license, without "sufficient sustaining probable cause on the officer's part to believe he had committed a crime." Based on the evidence presented, the trial court found in pertinent part,

certain facts which led to defendant's arrest. On the day in question, a Wallace Police Department Sergeant, with 12 years of experience, was on routine patrol. Upon observing the defendant parking in a no parking area, the sergeant drove past defendant and made eye contact with him. The officer was of the opinion that the defendant "appeared to be highly intoxicated according to the way he looked," thereupon, he drove off to a position where he could observe defendant and possibly follow him to determine whether he was in fact intoxicated. Defendant drove away followed by the officer. When defendant failed to respond to the blue light, the sergeant used his siren to stop him. Judge Peel concluded that, at this point, the officer "had an articulable and reasonable suspicion that the defendant was violating the law in his presence." This conclusion complies with the standard mandated by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889 (1968). We agree that the stop and detention did not violate any of the defendant's constitutional rights, and that *a fortiori*, the search incident to the arrest was valid.

Defendant also challenges the search of the vehicle by law enforcement officers without a warrant. The record discloses that the vehicle in question was in fact stolen. Defendant presented no evidence showing any legitimate property or possessory interest in the automobile. The law is well settled in this jurisdiction that one has no standing to "object to a search or seizure of the premises or property of another." *State v. Greenwood*, 301 N.C. 705, 707, 273 S.E. 2d 438, 440 (1980); *State v. Jones*, 299 N.C. 298, 261 S.E. 2d 860 (1980); *State v. Taylor*, 298 N.C. 405, 259 S.E. 2d 502 (1979). This principle follows the Supreme Court's interpretations of the Fourth Amendment set forth in *Rakas v. Illinois*, 439 U.S. 128, 58 L.Ed. 2d 387 (1978).

We believe that the defendant had no legitimate expectations of privacy in the stolen vehicle; therefore, this assignment of error is overruled.

This defendant received a trial free from prejudicial error.

No error.