STATE OF NORTH CAROLINA v. MANUEL SAVANUS MILLER.

(Filed 20 June, 1967.)

1. **Criminal Law § 99—**

Motion to nonsuit requires that the evidence be interpreted in the light most favorable to the State and all reasonable inferences favorable to the State must be drawn from it.

2. **Same—**

On motion to nonsuit in a criminal, as well as in a civil, action the credibility of witnesses and the weight to be given their testimony is to

be determined by the jury and not the court, and the court may not enter nonsuit on the ground that a witness is unworthy of belief: nevertheless, when the crucial testimony of a witness is irreconcilable with the physical facts established by the State's own uncontradicted evidence, nonsuit should be allowed.

**3. Criminal Law § 65—**

Ordinarily, the probative force of the testimony of a witness identifying defendant by sight is for the jury, but when the State's uncontradicted evidence as to the physical conditions makes the testimony of identity inherently incredible, the court may properly determine that such testimony has no probative force.

**4. Criminal Law § 101—  Uncontradicted evidence of physical facts held to render testimony as to identity by sight without probative force.**

The only evidence tending to identify defendant as one of the perpetrators of the offense was the testimony of a witness identifying defendant in a lineup as one of the persons he had seen at the scene of the crime. The State's uncontradicted evidence further tended to show that the witness was never closer than 286 feet from a man he saw running along the building in question, that the witness had never seen the man theretofore, that he saw this man run once in each direction, stop at the front of the building, "peep" around it and look in the witness' direction, and that the witness could not describe the color of the man's hair or eyes, or the color of his clothes, except that his clothes were dark. *Held:* The uncontradicted testimony as to the physical facts discloses that the witness' observation of defendant was insufficient to permit a reasonable possibility of the subsequent identification of the defendant with that degree of certainty which would justify the submission to the jury of the question of defendant's guilt.

APPEAL by the defendant from *Froneberger, J.,* at the 31 October 1966 Regular Criminal Session of MECKLENBURG.

Miller and one Robert Lee Early were indicted for feloniously breaking and entering the storehouse of the Hall Oil Company and for attempting to force open the company's safe in such building. The cases were consolidated for trial and both defendants were found guilty on each charge. The charges against Miller were consolidated for judgment and he was sentenced to confinement in the State Prison for 10 years. From this judgment he appeals. His codefendant, Early, did not appeal. Miller, the appellant, assigns as error the denial of his motion for judgment as of nonsuit, the admission over his objection of certain evidence offered by the State, and a number of alleged errors in the court's charge to the jury

The evidence introduced by the State is ample to show that the building of the Hall Oil Company, located at 2600 East 7th Street in the city of Charlotte, was broken and entered by two or more men between 6 p.m. and midnight on 28 September 1966, and that its safe, which contained money and other valuable properties, was

then damaged in an effort by such men to force it open. It also shows that the exterior of the building and surrounding grounds were well lighted by street lights nearby, floodlights at the front and back, and spotlights attached to the eaves, all of which lights were burning at the time in question. The building is approximately 286 feet from a Texaco Service Station, a vacant lot lying between the two buildings.

The sufficiency of the evidence to survive the motion by Miller for judgment as of nonsuit turns upon its adequacy to identify him as one of the men who participated in the breaking and entering.

Richard Melton, 16 years of age, walking past the service station building, which was closed, stopped there and, while standing at the rear of the service station, observed a man, whom he identified the next morning at the police station, and again in the courtroom, as Miller, move from the rear of the Oil Company building to the front thereof as an automobile passed by. Melton testified that this man "peeped out and then he went back." Melton then purchased a drink (presumably from a vending machine) and sat down to observe what was going on. As another automobile passed, Melton observed a man, whom he subsequently identified as Early, run from the Oil Company building to some trucks parked in the rear thereof. Melton then transferred his position to a bridge some 300 feet from the Oil Company building. He then heard a "banging noise" which appeared to come from the rear of the Oil Company building. He stopped a passing police car and told the officers there was someone in the Oil Company building. At that time, he observed Early run from the trucks to the building. Shortly thereafter, he went to the building and observed Early, then in custody, one of the officers having found him hiding two blocks away.

The next morning Melton went to the police station and picked Miller and Early out of a "lineup" of six men and identified them as the two men he had seen at the Oil Company building the night before. The other four men in the "lineup" were two neatly dressed police officers and two prisoners held on the charge of drunkenness.

Miller was not arrested by the police in the vicinity of the Oil Company building. He was picked up by an officer between 2 a.m. and 3 a.m. at a point 1.3 miles from the Oil Company building while walking along the street in the direction of his brother's home. At that time he was dressed in dark clothing. His trousers were wet almost up to the knees. He wore a jacket. His shirt was wet with perspiration.

On interrogation by the officers, Miller denied any knowledge of the events at the Oil Company building and stated that he had been out looking for employment. He rejected the offer of the police to

check this story if he would tell them where he had been so seeking employment.

Melton testified that he saw the man at the Oil Company building, whom he says was Miller, twice. The first time was when this man "was trotting toward the front of the Hall Oil Company building," at which time Melton could not see his face. The second time was when the man was "peeping out" from the front of the building, looking up and down 7th Street. Melton had then moved to the front corner of the service station. He observed this man then turn and run back toward the rear of the Oil Company building. In these several positions Melton saw the back of the man's head and each side. He also saw him "head-on" as the man looked down the street in the direction of the service station. He then saw the man's "facial features" and when the man turned he had a "side view of him." The man was wearing dark clothes. Melton had never seen Miller before. In describing the man, whom he had so observed, to the officers at the scene and time of the offense, Melton stated only that the man wore dark clothing and was about 6 feet, 3 inches tall. Miller is 5 feet, 11 inches tall. Melton was unable to tell the officers the color of the man's clothes, other than that they were dark, or the color of his hair or eyes.

Police Officer Bowman testified as to the identification of Miller and Early by Melton in the "lineup" the following morning, and also testified that he, Bowman, knew Miller had served a prison sentence and was "a good safe man."

The defendant testified in his own behalf to this effect: He had been released from prison the day before these alleged events. He spent the first night in Charlotte at his sister's home and then went to visit his brother, also a resident of Charlotte. While serving his prison sentence, he was employed in the poultry business under the Work Release Program. From this experience, he knew that truck drivers delivered poultry to the markets between midnight and dawn. Hoping to get work in the making of such deliveries, he went to the plant of the Southeastern Poultry Company about midnight and remained there until approximately 2 a.m., walking about, including some walking in high grass, which dampened the bottoms of his trousers. There being no one at the poultry plant and no trucks arriving, he left and was returning to his brother's home when picked up by the officers. He had never been in the vicinity of the Hall Oil Company and did not know where it was located. The first time he ever saw Early was when they were placed in the "lineup" at the police station for inspection by Melton. He did not tell the officers

where he had been in search of employment for the reason that he found no one there and thus no one could corroborate his statement.

*Attorney General Bruton, Staff Attorney White and Staff Attorney Partin for the State.*

*Sanders, Walker & London by James E. Walker and Arnold M. Stone for defendant appellant.*

LAKE, J. This Court has said many times that upon a motion for judgment of nonsuit in a prosecution for a criminal offense, the evidence must be interpreted in the light most favorable to the State, and all reasonable inferences favorable to the State must be drawn from it. *State v. Bridgers,* 267 N.C. 121, 147 S.E. 2d 555; *State v. Roux,* 266 N.C. 555, 146 S.E. 2d 654; Strong, N. C. Index, Criminal Law, § 99. Ordinarily, the credibility of witnesses and the proper weight to be given their testimony is to be determined by the jury, not by the court upon a motion for judgment of nonsuit. *State v. Orr,* 260 N.C. 177, 132 S.E. 2d 334. In *State v. Bowman,* 232 N.C. 374, 61 S.E. 2d 107, Ervin, J., speaking for the Court, said:

> "The defendant insists secondarily, however, that the testimony of the State tending to show his guilt was incredible in character, and that the trial court ought to have nonsuited the action on the ground that the witnesses giving it were unworthy of belief. * * * In ruling on such motion, the court does not pass upon the credibility of the witnesses for the prosecution, or take into account any evidence contradicting them offered by the defense. The court merely considers the testimony favorable to the State, assumes it to be true, and determines its legal sufficiency to sustain the allegations of the indictment. Whether the testimony is true or false, and what it proves if it be true are matters for the jury."

Thus, in *State v. Humphrey,* 261 N.C. 511, 135 S.E. 2d 214, this Court, in sustaining the denial of a motion for judgment of nonsuit, said:

> "We are not impressed with the argument that we should hold, as a matter of law, that the lights on the street and automobile were not bright enough to enable the witness to *recognize* the defendant. The court properly left that question to the jury." (Emphasis added.)

Again, in *State v. Guffey,* 265 N.C. 331, 144 S.E. 2d 14, this Court, in affirming the denial of a motion for nonsuit on the charge of robbery, said:

"The question whether the testimony of the prosecuting witness, tending to identify appellant as one of the robbers, has any probative force was for the jury."

This rule does not apply, however, where the only evidence identifying the defendant as the perpetrator of the offense is inherently incredible because of undisputed facts, clearly established by the State's evidence, as to the physical conditions under which the alleged observation occurred. In *Jones v. Schaffer*, 252 N.C. 368, 114 S.E. 2d 105, Bobbitt, J., speaking for the Court, in sustaining a judgment of nonsuit in an action for damages, said:

"Ordinarily, the weight to be given the testimony of a witness is exclusively a matter for jury determination. Even so, this rule does not apply when, as here, the only testimony that would justify submission of the case for jury consideration is in irreconcilable conflict with physical facts established by plaintiff's uncontradicted evidence. * * *

" 'As a general rule, evidence which is inherently impossible or in conflict with indisputable physical facts or laws of nature is not sufficient to take the case to the jury, and in case of such inherently impossible evidence, the trial court has the duty of taking the case from the jury.' 88 C.J.S., Trial, § 208(b)(5); *Powers v. Sternberg*, 213 N.C. 41, 43, 195 S.E. 88; *Atkins v. Transportation Co.*, 224 N.C. 688, 32 S.E. 2d 209; *Ingram v. Smoky Mountain Stages, Inc.*, 225 N.C. 444, 35 S.E. 2d 337; *Tysinger v. Dairy Products*, 225 N.C. 717, 723, 36 S.E. 2d 246; *Carr v. Lee, supra* [249 N.C. 712, 107 S.E. 2d 544]."

Similiarly, in *Keith v. Gas Co.*, 266 N.C. 119, 146 S.E. 2d 7, we said:

"The rule that, in passing upon a motion for judgment of nonsuit, the plaintiff's evidence must be taken to be true does not extend to an opinion by a witness, not present at the event, to the effect that a condition existed which is contrary to scientific truth so well established that the court would take judicial notice of it."

Upon a motion for judgment of nonsuit in a criminal action, the function of the court and its authority to consider the credibility of the evidence offered by the State, are the same as the function and authority of the court upon a similar motion in a civil action with reference to evidence offered by the plaintiff. *State v. Ormond*, 211 N.C. 437, 191 S.E. 22; *State v. Sigmon*, 190 N.C. 684, 130 S.E. 854; *State v. Fulcher*, 184 N.C. 663, 113 S.E. 769.

Without the testimony of Richard Melton, there would be a complete failure of the State's evidence to connect the defendant Miller with the offense with which he is charged. Melton's own testimony shows that he was never closer than 286 feet from the man whom he saw running along the side of the Oil Company building. He saw this man run once in each direction, stop at the front of the building, "peep" around it and look in Melton's direction. Melton did not then know Miller. Thus, his testimony is not that he recognized at that distance a man previously known to him, but that he saw for the first time a stranger. Some six hours later, he saw Miller in a police "lineup," so arranged that the identification of Miller with the man seen earlier would naturally be suggested to the witness.

Notwithstanding the fact that the exterior of the Oil Company building and the surrounding area were well lighted, it is apparent that the distance was too great for an observer to note and store in memory features which would enable him, six hours later, to identify a complete stranger with the degree of certainty which would justify the submission of the guilt of such person to the jury.

It is to be noted that immediately after observing the man who ran beside the Oil Company building, Melton described him to the police as one substantially taller than the defendant Miller actually is and otherwise described him only as a man dressed in dark clothing.

Where there is a reasonable possibility of observation sufficient to permit subsequent identification, the credibility of the witness' identification of the defendant is for the jury, and the court's doubt upon the matter will not justify granting a motion for judgment of nonsuit, but upon the physical conditions shown here by the State's evidence, the motion should have been allowed.

Reversed.