STATE OF NORTH CAROLINA v. BENNY REID HERNDON

No. 43

(Filed 14 April 1977)

1. **Criminal Law § 76.5— admissibility of confession — necessity for findings**

When there is conflicting evidence introduced at a *voir dire* hearing to determine the admissibility of an in-custodial, inculpatory statement made by a defendant, the trial judge must make findings of fact to show the basis of his ruling on admissibility, and such findings are conclusive upon the reviewing court if supported by competent evidence appearing in the record.

2. **Criminal Law § 76.8— waiver of constitutional rights — conflicting evidence**

The evidence supported the trial court's determination that defendant's in-custody statement was voluntarily given after a proper waiver of his constitutional rights, although defendant testifed that he was coerced into signing a waiver of his rights by reason of an assault upon him by an officer.

3. **Criminal Law § 66.1— in-court identification — opportunity for observation**

A rape victim's identification of defendant as her assailant was not rendered inadmissible by the victim's physical condition and the darkness of the scene of the crime where the evidence on *voir dire* showed that there was sufficient sunlight for the victim to see the two men in her room at 6:30 a.m. and that the men were in her apartment for thirty to forty-five minutes; during this time the victim's eyes were never covered or her vision otherwise obstructed; although the victim usually wore glasses or contact lenses, she was able to see clearly persons and objects close to her without her glasses; and at varying times, defendant's face was within one foot of the victim.

4. **Criminal Law § 66.3— objection to lineup evidence — similar evidence admitted without objection**

The admission over objection of an officer's testimony concerning a lineup will not furnish the basis for a new trial where evidence of the lineup had already been placed before the jury, without objection, during testimony by the prosecutrix.

5. **Criminal Law § 102.5— conduct of district attorney — improper examination of witness**

A district attorney may not needlessly badger or humiliate a witness by asking impertinent or insulting questions which he knows will not elicit relevant or competent evidence, and he may not place before the jury through insinuating questions, argument, or other means any evidence which is incompetent and prejudicial and not legally admissible.

State v. Herndon

6. **Criminal Law § 102.5— conduct of district attorney — cross-examination of witnesses not improper**

Defendant is not entitled to a new trial because of questions propounded by the district attorney to defendant and his mother on cross-examination where the questions to which objections were sustained did not place before the jury any incompetent or otherwise inadmissible evidence, and questions to which objections were not sustained were proper for impeachment purposes as tending to show specific acts of misconduct of defendant and bias of defendant's mother.

7. **Criminal Law § 165— necessity for objection to remarks of counsel**

Objections to improper remarks by counsel must be made before verdict or else be lost.

APPEAL pursuant to G.S. 7A-27(a) from *Fountain, J.*, at the 18 October 1976 Session of MECKLENBURG Superior Court.

Defendant was tried upon indictments, proper in form, which charged him: (a) with the rape of Patricia Louise McCroskey; (b) with the breaking and entering of the apartment of Ms. McCroskey with intent to commit a larceny therein; and (c) with the larceny of certain items of personalty belonging to Ms. McCroskey. Upon the return of a verdict of guilty to each of the above stated offenses, defendant was sentenced to life imprisonment on the conviction for rape and ten years on the conviction of breaking and entering with intent to commit larceny and larceny.

The State introduced evidence tending to show that at approximately 6:00 or 6:30 a.m. on 5 July 1976, defendant and one Charles Carson broke into the apartment of Ms. McCroskey. The two men then raped her several times. As the men left the apartment, they took certain personal property belonging to Ms. McCroskey, having a value in excess of $100.00. Defendant made a statement to officers which contained the facts related above, and which also enabled the officers to locate the property taken from Ms. McCroskey's apartment on this occasion.

Defendant testified in his own behalf. He stated that he did not commit the crimes for which he was indicted and that he did not make any statement to the police. Defendant also offered the testimony of his mother and sister, each of whom stated that defendant was at his home on the morning of 5 July 1976.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas B. Wood for the State.*

*David R. Badger for defendant appellant.*

MOORE, Justice.

Defendant first contends that any inculpatory statements that he made to law enforcement officers should have been suppressed. He further argues that the findings made by Judge Hasty are not sufficient to support the conclusion that the statements were voluntarily and understandingly made.

Upon defendant's motion to suppress his statement to police, a hearing was held prior to trial before Judge Hasty on 21 September 1976. At the hearing, the State introduced the testimony of W. D. Starnes and W. M. Goff, investigators for the Charlotte Police Department. The testimony for the State tended to show that defendant, both orally and in writing, voluntarily and understandingly waived his "Miranda" rights after having been fully apprised thereof. The evidence further tended to show that the statement made by defendant at this time was freely and voluntarily given and was not the product of any threats or coercion. Defendant, however, testified that he was coerced into signing a waiver of his rights by reason of an assault upon him by Officer Starnes. Defendant denied that he made a statement regarding the crimes to any law enforcement officers.

After hearing this evidence, Judge Hasty made detailed findings of fact which contained, *inter alia,* this finding:

"Defendant was then taken to an interview room at the Law Enforcement Center in Charlotte where he was read his Miranda rights by a law enforcement officer from State's Exhibit 1, after which defendant stated he understood what his rights were. At this time the officer handed defendant State's Exhibit 1, the defendant read it and stated he did not wish to have an attorney present, initialed this section of the exhibit, and signed it as indicated. The defendant was then interrogated during the course of which he made several incriminating statements. He did not appear to be under the influence of drugs or alcohol, and at no time did the officer promise him anything nor was he threatened or physically harmed so as in

any way to cause him to execute the waiver or incriminate himself. He is 19 years of age, advanced to the 9th grade in school, can read and write, has gone through the arrest procedure before, and knew of what his rights consisted."

Judge Hasty concluded that defendant was fully and properly advised of his constitutional rights and knowingly waived them. The judge further concluded that any statement made by defendant was voluntary and not the product of any promises, threats or coercion on the part of law enforcement officers. Later, at trial, Judge Fountain conducted another hearing during which he reviewed the evidence and findings made by Judge Hasty. Judge Fountain entered the additional conclusion that defendant had voluntarily waived his right to remain silent.

[1, 2] It is well established in this jurisdiction that when there is conflicting evidence introduced at a *voir dire* hearing to determine the admissibility of an in-custodial, inculpatory statement made by a defendant, the trial judge must make findings of fact to show the basis of his ruling on admissibility. *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53 (1969). Such findings of fact are conclusive upon the reviewing court if supported by competent evidence appearing in the record. *State v. Barber,* 278 N.C. 268, 179 S.E. 2d 404 (1971); *State v. Wright,* 275 N.C. 242, 166 S.E. 2d 681, *cert. den.,* 396 U.S. 934 (1969). In present case, the findings of fact by the trial judge were supported by evidence in the record and were sufficient to support the conclusion that defendant's statement was voluntarily given after a proper waiver of his constitutional rights. Any contradictions between the defendant's testimony and that which was introduced by the State were for the trial judge to resolve, and his ruling will not be disturbed on appeal. *State v. Miley,* 291 N.C. 431, 230 S.E. 2d 537 (1976). This assignment is overruled.

[3] Defendant next contends that there was no evidence of any probative value which would identify defendant as one of the men who raped Ms. McCroskey. Defendant argues that this conclusion should be reached because the physical condition of the prosecutrix and the darkness of the scene of the crime made identification of him impossible. For this proposition, he cites *State v. Miller,* 270 N.C. 726, 154 S.E. 2d 902 (1967).

In *Miller,* the State's evidence tended to show that the witness who identified defendant saw a man running along the

side of a building which had been burglarized. The witness testified that the man ran along the side of the building twice, once stopping in front of the building to "peep" around it. The witness did not know defendant, but was able to pick him out of a "lineup" which was "so arranged that the identification of [defendant] would naturally be suggested to the witness." 270 N.C. at 732, 154 S.E. 2d at 905. Further, the evidence was uncontradicted that the witness was never closer than 286 feet from defendant and that the crime occurred at night. This Court held that the physical conditions under which the witness purportedly saw defendant were such that the State should have been nonsuited. However, the Court also stated: "Where there is a reasonable possibility of observation sufficient to permit subsequent identification, the credibility of the witness' identification of the defendant is for the jury. . . . " 270 N.C. at 732, 154 S.E. 2d at 906.

We hold that in present case there was more than a "reasonable possibility of observation sufficient to permit subsequent identification." Upon timely objection by defendant, a *voir dire* hearing was held concerning the ability of Ms. McCroskey to see defendant. The evidence at this hearing showed that there was sufficient sunlight for Ms. McCroskey to see the two men in her room and that the men were in her apartment for thirty to forty-five minutes. During this time, Ms. McCroskey's eyes were never covered or her vision otherwise obstructed. Although she wore glasses or contact lenses, she was able to clearly see persons and objects close to her. At varying times, defendant's face was within one foot of Ms. McCroskey. Hence, we agree with Judge Fountain's conclusion that Ms. McCroskey could clearly and plainly see defendant in her apartment. Ms. McCroskey had the opportunity and the ability to see her assailant. The credibility of her testimony and the weight to be given thereto were properly submitted to the jury. *State v. v. Humphrey*, 261 N.C. 511, 135 S.E. 2d 214 (1964). This assignment is overruled.

[4]   During direct examination, Ms. McCroskey testified without objection that on 19 July 1976 she viewed a lineup at the Mecklenburg County Jail which consisted of five black males. She further testified that she did not see defendant in the lineup and could not identify anyone in it. Prior to the introduction of this testimony, a *voir dire* hearing was held upon defendant's motion to suppress Ms. McCroskey's in-court identification.

After hearing the evidence on *voir dire,* Judge Fountain found that the identification was of independent origin and based entirely upon Ms. McCroskey's observation of defendant on the morning of 5 July 1976. *See State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975) ; *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974). Defendant contends that the admission of the evidence of the 19 July 1976 lineup was prejudicial error in that it improperly corroborated Ms. McCroskey's identification of defendant.

At trial, defendant did not object to the testimony of Ms. McCroskey concerning the lineup nor to the introduction of a photograph of the lineup. Rather, defendant objected to the testimony of W. D. Starnes, the law enforcement officer who conducted the lineup. Starnes' testimony regarding the lineup was similar to and corroborated that of Ms. McCroskey. Thus, the evidence to which defendant objected, and to which he now assigns error, had already been placed before the jury, without objection, during the direct examination of Ms. McCroskey. Accordingly, assuming, *arguendo,* that the admission of the lineup evidence through Starnes' testimony was error, it will not furnish the basis for a new trial. *See State v. Monk,* 291 N.C. 37, 229 S.E. 2d 163 (1976) ; *State v. Grace,* 287 N.C. 243, 213 S.E. 2d 717 (1975) ; *State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735 (1972) ; *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844 (1972) ; 1 Stansbury, N. C. Evidence § 30 (Brandis rev. 1973). This assignment is overruled.

Defendant contends that the conduct of the district attorney during the course of the trial was sufficiently improper to warrant a new trial. This contention is directed to certain questions propounded to defendant and his mother on cross-examination and to certain portions of the district attorney's argument to the jury.

With respect to the questions propounded to the defendant and his mother, it appears that during cross-examination the district attorney asked defendant six questions to which objections were sustained. A representative example of these questions is:

"Q. And when she says she looked straight in your face, she's wrong about that, too?

OBJECTION.

OBJECTION SUSTAINED."

Other questions, to which objections were not sustained, dealt with impeaching the witness for specific acts of misconduct on the part of that witness. An example of these questions is:

"Q. I'll ask you if on the 4th of July, 1976, you didn't go to 1625-H Merry Oaks Road off Central Avenue, where you and Charles Carson found two young women in that apartment and you and Charles Carson raped both of those women, didn't you?

OBJECTION.

OBJECTION OVERRULED.

A. No, I didn't."

[5] It is a well settled rule in this jurisdiction that a district attorney may not needlessly badger or humiliate a witness by asking impertinent or insulting questions which he knows will not elicit relevant or competent evidence. *State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972). Likewise, the district attorney may not place before the jury through insinuating questions, argument, or other means any evidence which is incompetent and prejudicial and not legally admissible in evidence. *State v. Anderson,* 283 N.C. 218, 195 S.E. 2d 561 (1973). The trial judge, however, has wide discretion in controlling the examination of witnesses. *State v. Daye, supra.*

[6] In present case, we find no conduct by the district attorney which would furnish the basis for a new trial. The questions to which objections were sustained did not place before the jury any incompetent or otherwise inadmissible evidence. Those questions to which objections were not sustained were proper for impeachment purposes as tending to show specific acts of misconduct on the part of the witness; or, with respect to those questions asked of defendant's mother, to show bias. *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972); *State v. Hart,* 239 N.C. 709, 80 S.E. 2d 901 (1954). *See also* 1 Stansbury, N. C. Evidence §§ 45, 111 (Brandis rev. 1973).

[7] Defendant raises numerous assignments of error addressed to the district attorney's argument to the jury. Only one portion of the argument was objected to at trial. This objection was sustained and the jury instructed to disregard the improper statement. The remainder of the assignments were not objected to at trial. Hence, we apply the rule that objections to improper

remarks by counsel must be made before verdict or else be lost. *State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503 (1970). In light of the failure of defendant to object and the lack of any impropriety in the district attorney's argument sufficient to warrant a new trial, we overrule this assignment.

We have reviewed the entire record and all of defendant's assignments. There is no error contained therein sufficient to constitute prejudicial error and require a new trial.

No error.