STATE OF NORTH CAROLINA v. JEAN BULLARD BREWER

No. 158A90

(Filed 3 April 1991)

## 1. Homicide § 15 (NCI3d)— murder—car parked on train crossing—testimony of engineer—not inherently incredible

In a homicide prosecution in which defendant was alleged to have murdered her handicapped and epileptic daughter by leaving her automobile in front of an oncoming train, the trial court did not err by admitting the testimony of a pilot engineer of the train or by submitting the case to the jury even though defendant contended the evidence was contrary to reason and common experience and that the case should have been dismissed. There was evidence in the record that there were no curves in the tracks at the scene; it was reasonable to infer from the evidence that the headlight provided sufficient illumination of the crossing; the precision of the engineer's description was consistent with his eleven-year familiarity with the route; and defendant's own statements substantiate the engineer's testimony that defendant's car backed up after stopping on the tracks.

**Am Jur 2d, Homicide § 425.**

## 2. Homicide § 21.5 (NCI3d)— murder—car left at train crossing—premeditation and deliberation

The State presented substantial evidence of premeditation, deliberation, and intent to kill in a homicide prosecution in which defendant was alleged to have abandoned her handicapped and epileptic daughter in an automobile in front of an oncoming train where it could be inferred from the evidence that the burdens of caring for a mentally handicapped daughter became too much for defendant; the daughter's school principal testified that the bus driver was sometimes unable to leave

the daughter, Sherry, at home because there would be no one there to care for her; Sherry's natural father testified that he ceased providing financial support the previous summer because his business failed and he was in jail; there was evidence that defendant spent time devising a plan to kill Sherry; defendant drove home from a store by a different and longer route, crossing the railroad tracks at a point where there were no lights or crossbars; defendant said in her statement to police that she had the radio turned up loud and had either told Sherry to lock her door or had reached over and locked it herself; the train engineer's testimony implied that defendant centered the front seat of the automobile on the tracks and exited the automobile moments before the train struck; and the gear shift of the automobile was found to be in the parked position after the accident.

**Am Jur 2d, Homicide § 439.**

3. **Homicide § 21.5 (NCI3d) — murder — victim left in car in front of oncoming train — evidence of victim's handicap**

The evidence in a murder prosecution supported a finding that the victim was physically and mentally disabled and that defendant knew of her disability where defendant was alleged to have abandoned the victim in an automobile in front of an oncoming train; defendant argues, in effect, that the victim's failure to leave the car caused her death; the evidence shows that defendant herself told officers that the victim, Sherry, was not normal and could not take care of herself; Sherry's I.Q. ranged from thirty-seven to forty-seven and defendant testified on cross-examination that she had treated the sixteen-year-old Sherry as she would a five-year-old; Sherry attended special education classes all of her school years; defendant testified that Sherry could not care for herself and that she had to bathe and dress Sherry; and, despite testimony by Sherry's teacher that Sherry could get in and out of a seat belt, defendant said in her statement to police that Sherry could not get out of a seat belt.

**Am Jur 2d, Homicide §§ 17, 425.**

4. **Homicide § 30 (NCI3d) — murder — first degree murder — refusal to submit second degree murder — no error**

The trial court did not err in a first degree murder prosecution by refusing to submit second-degree murder where de-

STATE v. BREWER

[328 N.C. 515 (1991)]

fendant was alleged to have abandoned her handicapped daughter in front of an oncoming train; all of the evidence clearly supports the elements of premeditation and deliberation; there was no evidence of provocation by the deceased; there is evidence that defendant planned her crime while waiting at a convenience store; the fact that defendant got out of the car and left her daughter in the path of an oncoming train indicates defendant's intent to kill; and there was evidence of motive in that the burden of caring for her handicapped daughter had become too much for defendant.

**Am Jur 2d, Homicide § 530.**

ON appeal from judgment entered 17 August 1989 by *Farmer,* J., at the 14 August 1989 Criminal Session of ROBESON County Superior Court. Appeal is pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court 13 November 1990.

*Lacy H. Thornburg, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Justice.

Defendant was convicted of murder in the first degree of her daughter, Sherry Bullard. From a judgment of life imprisonment, defendant appealed. She contends that the trial court erred in failing to grant her motion to dismiss at the close of the evidence and by failing to submit second-degree murder to the jury. We hold that there was no error in defendant's trial.

At approximately 9:00 p.m. on 20 October 1988, defendant was driving her 1988 Beretta automobile with her daughter sitting beside her in the passenger seat. Sherry, then sixteen years old, was mentally handicapped and was epileptic. At the time of her death, she had been taking medications for seizures. On the evening of 20 October, defendant drove the automobile onto a rural railroad crossing. She centered the automobile on the train tracks as the train approached, so that the passenger side was facing the train. The defendant then left the car before the train struck the automobile, killing Sherry.

The defendant argues in her first assignment of error that the trial court erred by denying defendant's motion to dismiss at the close of the evidence because, according to defendant, there was insufficient evidence presented at trial from which the jury could find defendant guilty of murder in the first degree beyond a reasonable doubt.

When ruling upon a motion to dismiss, the trial court must determine whether, when considered in the light most favorable to the State, there is substantial evidence of each element of the offense. *E.g., State v. Forrest*, 321 N.C. 186, 362 S.E.2d 252 (1987). " 'Substantial evidence' is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981) (citations omitted).

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. N.C.G.S. § 14-17 (1989); *State v. Vause*, 328 N.C. 231, 400 S.E.2d 57 (1991). In the instant case, the State was required to produce evidence sufficient to establish beyond a reasonable doubt that the defendant unlawfully killed her daughter with malice and with the specific intent to kill, committed after premeditation and deliberation. *E.g., State v. Bray*, 321 N.C. 663, 365 S.E.2d 571 (1988).

Defendant argues that the State's proof was insufficient to survive defendant's motion to dismiss in three respects: (1) The testimony of witness James Caulder was inherently incredible and therefore of no "significant" probative value; (2) even if Caulder's testimony were taken as true, the evidence most favorable to the State still supported no more than a suspicion or conjecture that defendant acted with the required mental state for murder in the first degree; and (3) the State failed to meet its burden of producing substantial evidence to support a finding by the jury that the victim was so disabled as to be unable to protect herself or that the defendant had knowledge of that alleged level of disability.

[1] We first examine the testimony of one of the State's witnesses, James Caulder, a pilot engineer of the train that struck the automobile. Defendant's contention is that particular details of Caulder's testimony concerning what he could see from the train as it approached the car were exaggerated and patently improbable. Defendant also argues that Caulder's testimony was the only evidence presented by the State establishing that defendant's failure to avoid

STATE v. BREWER

[328 N.C. 515 (1991)]

the collision was by design rather than by accident. Therefore, defendant concludes that because Caulder's testimony was inherently incredible and because it was the only evidence justifying submission of the case to the jury, the case should have been dismissed. See, e.g., State v. Miller, 270 N.C. 726, 154 S.E.2d 902 (1967).

Caulder had been an employee of CSX Railroad for twenty-two years and a locomotive engineer for twelve years at the time of the collision. The train involved in this case was en route from Wilmington to Hamlet, North Carolina, a run which Caulder had made on the average of twice a week for approximately eleven years. He estimated that the train's headlight could pick up objects a mile away. Caulder testified that on the evening of the accident when the train was about forty-three hundred to forty-five hundred feet from the crossing at which the collision occurred, Caulder saw a white Beretta automobile stopped at the crossing. When the train was about twenty-five hundred to three thousand feet from the crossing, the automobile proceeded onto the crossing at an extremely slow rate of speed and in such a way that the backseat or the rear portion of the car was centered in the middle of the railroad track. When the train was about twenty-three hundred or twenty-four hundred feet from the crossing the car backed up and centered the front seat in the center of the track. Caulder went on to testify that at this point he thought the driver of the car was playing chicken with the train. That is, someone driving onto the tracks and waiting until the last moment to drive off. Caulder continued to watch the car. At about seven hundred or eight hundred feet from the crossing, Caulder observed the driver's side door open; he then applied the train's emergency brakes. As he got closer to the car, he could observe the car's occupant. He described the girl as very rigid, with her head tilted back. She looked forward and never looked at the train. The train struck the car about ten seconds after the car door opened. Caulder testified that the car was on the tracks for approximately fifty to sixty seconds before the driver's door opened.

Defendant contends that Caulder's testimony was so contrary to reason and common experience that the trial judge should not have submitted the case to the jury. State v. Miller, 270 N.C. 726, 154 S.E.2d 902. In Miller, a robbery victim got only a brief look at the perpetrator in a well-lit area at night from 286 feet away. The Court held that the distance was too great and the time too brief for a certain identification of a complete stranger

so as to justify submission to the jury. However, "[w]here there is a reasonable possibility of observation," the credibility of the witness is for the jury. *Id.* at 732, 154 S.E.2d at 906. Here, defendant argues the description and detail given by Caulder is even more improbable, given the distances, brief amount of time, and lack of lighting. The most important of Caulder's statements bearing on the intent element was the centering of the front seat of the car when the train was nearly a half mile away. Defendant contends that while Caulder may have been able to see the car at this distance, it is implausible to assume that he could identify the minute degree of movement he described.

We disagree with defendant's contention that it was physically impossible for Caulder to see what he claimed he saw. There was evidence in the record that there were no curves in the tracks at the scene, and it was reasonable to infer from the evidence that the headlight provided sufficient illumination of the crossing. The precision of Caulder's description is consistent with his eleven-year familiarity with the route. Finally, defendant's own statements substantiate Caulder's testimony that the car backed up after stopping on the tracks. Defendant testified on direct, "In my mind, it seemed like I was going backwards and forth." She also testified on direct that Sherry looked straight ahead as the train approached. Therefore, we hold that Caulder's testimony was not so inherently incredible as to require the judge to take the case from the jury.

[2] Defendant's next argument under her first assignment of error is that regardless of Caulder's credibility, the State's evidence was insufficient to prove premeditation and deliberation. Defendant argues that the evidence supports no more than a suspicion or conjecture that defendant's actions were due to anything more than fright or, at most, recklessness. Taking the evidence in the light most favorable to the State as we must in deciding whether there is substantial evidence of the crime charged, *e.g., State v. Simpson*, 303 N.C. 439, 279 S.E.2d 542 (1981), we hold that the evidence was sufficient to support a conviction of first-degree murder. The mental elements are normally proven by circumstantial evidence, including defendant's behavior before and after the killing and the manner of the killing. *E.g., State v. Fisher*, 318 N.C. 512, 350 S.E.2d 334 (1986).

It may be inferred from the evidence that the burdens of caring for a mentally handicapped daughter became too much for

defendant. Sherry's school principal testified that the bus driver was sometimes unable to leave Sherry at home because there would be no one there to care for her. Sherry's natural father testified that he ceased providing financial support the previous summer because his business failed and he was in jail. Moreover, there was evidence that defendant spent time devising a plan to kill Sherry. Witnesses testified that defendant sat in her car at a convenience store for about forty-five minutes before beginning the fateful trip home. Defendant testified that she had gone to the store to rent a movie, but discovered that she had left her purse at home. She sat in the car with her daughter debating what to do and waiting to use the public telephone. She finally headed home, taking a different and longer route home, crossing the tracks at a point where there were no lights or crossbars to warn Sherry of the danger. Defendant said in her statement to police that she had the radio turned up loud and had either told Sherry to lock her door or had reached over and locked it herself. Caulder's testimony implied that defendant centered the front seat of the car on the tracks and exited the automobile moments before the train struck. The gearshift of the automobile was found to be in the "park" position after the accident. We hold that the State presented substantial evidence of premeditation, deliberation, and intent to kill.

[3] Defendant further argues that the evidence failed to show that Sherry was, by reason of her handicap, unable to protect herself or that defendant had knowledge of such incapacity. The trial judge modified the pattern jury instruction for first-degree murder due to the unique nature of this case:

First, that the defendant intentionally and with malice killed the victim, Sherry Maria Bullard, by intentionally leaving her car on the railroad tracks with her daughter, Sherry, in it, and further, that her daughter was a handicapped person physically and mentally disabled and not able to protect or defend herself, and that the defendant herself knew that.

A handicapped person is a person who has a physical or mental disability such as mental retardation, or mental illness, or some other infirmity which would substantially impair that person[']s ability to defendant [sic] or protect herself.

Defendant argues that the instruction bears on both the issues of proximate cause and intent to kill. She argues that absent proof

that Sherry was not capable of exiting the car, it does not follow that defendant's action of leaving the car was the proximate cause of death. Defendant contends that the evidence proves that Sherry was not physically disabled because she was mainstreamed into regular physical education classes and had been taught in school how to get out of a car. In effect, defendant argues that Sherry's failure to leave the car caused her death.

The State argues, and we agree, that the evidence supports the conclusion that Sherry was unable to protect or defend herself against the train because of her physical and mental disabilities. Taken as a whole and in the light most favorable to the State, the evidence shows that defendant herself told officers that Sherry was not normal and could not take care of herself. Sherry's I.Q. ranged from thirty-seven to forty-seven and defendant testified on cross-examination that she treated Sherry as she would a five-year-old. Sherry attended special education classes all of her school years. Defendant testified that Sherry could not care for herself and that defendant had to bathe and dress Sherry. Despite testimony by Sherry's teacher that Sherry could get in and out of a seat belt, defendant said in her statement to police that Sherry could not get out of a seat belt. Contradictions in the evidence are for the jury to decide. E.g., State v. Lowery, 309 N.C. 763, 309 S.E.2d 232 (1983). Considering that part of the evidence favorable to the State, State v. Simpson, 303 N.C. 439, 279 S.E.2d 542, we hold that the evidence does support a finding that Sherry was physically and mentally disabled and that defendant knew of her disability.

[4] Defendant alleges in her second assignment of error that the trial court erred in denying her request for a jury instruction on second-degree murder. The court instructed on first-degree murder and involuntary manslaughter. Second-degree murder is an unlawful killing with malice, but without premeditation and deliberation. E.g., State v. Robbins, 309 N.C. 771, 309 S.E.2d 188 (1983).

Intent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice. State v. Lang, 309 N.C. 512, 308 S.E.2d 317 (1983). Defendant argues that because there is insufficient evidence to show premeditation and deliberation, the evidence shows, at most, second-degree murder based on her intentional act of leaving the automobile. The evidence would thus permit a jury rationally to find the lesser offense of

second-degree murder. *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983). A trial judge is no longer required to submit second-degree murder in all cases of alleged premeditated first-degree murders based on premeditation and deliberation. *Id.* The judge must submit the lesser offense if there is any evidence or inference to be deduced therefrom to show a lesser grade of murder; but where the evidence "is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged," the judge should not submit the lesser offense. *Id.* at 283, 298 S.E.2d at 652. The purpose of this rule is to eliminate compromise verdicts. *State v. Bullock*, 326 N.C. 253, 388 S.E.2d 81 (1990).

Defendant contends that the State's evidence of intent was contradicted by her statements that she loved her child. Moreover, defendant argues that a jury could reasonably infer that defendant was guilty of second-degree murder. She argues that the principles involved in cases of drunk drivers charged with second-degree murder, *see, e.g., State v. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (1984), are equally applicable to any driver operating a motor vehicle recklessly but without intent to kill. Standing alone, culpable negligence supports the submission of involuntary manslaughter. *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978). However, where the negligence also involves "danger to another [and] is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life," it will support second-degree murder. *Id.* at 582, 247 S.E.2d at 918 (quoting *State v. Trott*, 190 N.C. 674, 679, 130 S.E.2d 627, 629 (1925)).

We hold that the trial judge did not err by refusing to submit second-degree murder. Here, there is no evidence to sustain such a verdict. All of the evidence, direct and circumstantial, clearly supports the elements of premeditation and deliberation. There is no evidence of provocation by the deceased, while there is evidence that defendant planned her crime while waiting in the car at a convenience store. The fact that she got out of her car and left her daughter in the path of an oncoming train indicates defendant's intent to kill. As for motive, there was evidence that the burden of caring for her handicapped daughter became too much for defendant. Based on the overwhelming evidence of premeditation and deliberation, her intent to kill her daughter, and the lack of evidence to support second-degree murder, we hold that failure to submit second-degree murder was not error. *See State v. Bullock*, 326

N.C. 253, 388 S.E.2d 81. The court instructed on first-degree murder, for which there was substantial evidence, and involuntary manslaughter. On the theory of involuntary manslaughter, the jury could have reasonably concluded that defendant drove her car carelessly onto the railroad tracks, panicked, and failed to extricate Sherry from the car. However, there is no basis that would justify submission of second-degree murder.

Accordingly, we hold that in defendant's trial there was

No error.