TYSON, Judge.
Roderick Deshawn Milton ("defendant") appeals from judgment entered after a jury found him to be guilty of first-degree murder of Bill Kenneth Ross ("Ross"). We find no error.
I. Background
A. The Fight
The State's evidence tended to show on 13 February 2001, defendant called a taxicab to pick him up from Taneka Williams's ("Williams") house on Davis Street in Jacksonville. Several people, including Ross, were blocking the street when the taxi, driven by Devon Kemper ("Kemper"), arrived. Defendant told the people to move as he entered the taxi. The majority of the individuals moved to the sidewalk. Eddie Brown, Jr. ("Brown"),Ross's cousin and good friend, remained in the street in front of the cab. Defendant exited the taxi and started fighting with Brown. As they fought on the ground, Ross approached and kicked defendant in the head.
The fight ended. While defendant walked back to the taxi, he and Ross screamed back and forth at one another. Defendant yelled at Ross, "I'm going to get you, Bill, I'm going to get you." Defendant and his friend, Charles Harper ("Harper"), entered the taxi and Kemper drove away. During the ride, Kemper overheard defendant and Harper say, "we're going to get his a____." Defendant spoke on his cell phone during the remainder of the ride. Kemper dropped defendant off in the Georgetown area of Jacksonville.
Eddie Brown, Sr., and Brown's two uncles learned of the fight. They went to Davis Street to pick up Brown and take him home. Ross called a taxi and coincidentally Kemper was the driver dispatched. Kemper drove Ross from Davis Street to Brown's home. Ross told Kemper that he was scared of defendant because of the fight. Brown, his father, his two uncles, and Ross ended up at Brown's home. Ross told Eddie Brown, Sr., and one of Brown's uncles he was scared of defendant and stated, "you know Roderick's going to kill me. Roderick's going to kill me. I know it, man."
Stanley Clyburn ("Clyburn") is defendant's cousin and leader of the Black Gangster Disciples gang. Ross and Brown were both gang members. Later in the evening of 13 February 2001 after the fight ended, Clyburn went to Williams's home on Davis Street and learned of the fight between defendant, Ross, and Brown. Clyburntestified defendant called him while he was there and complained about being kicked in the face by Ross. Defendant asked if Clyburn could get him a gun. Clyburn used his cell phone to call a friend, Calvin Morgan, who "dealt" in guns. Tanesha Morgan, Calvin's sister answered the phone, then passed it to Teddy Hill ("Hill") who was visiting. Hill said he had a gun for sale. Clyburn gave Hill's number to defendant in the event he still wanted to buy the gun.
On 14 February 2001, Ross was present at Brown's house wearing orange jogging pants and an orange Nike shirt. Ross, Brown, and another friend went out for Valentine's Day. Ross did not return to Brown's home thereafter. Ross's body was discovered on 20 February 2001 near a set of abandoned railroad tracks. Ross suffered bullet wounds to the neck, chest, and back of the head. He had been dead for several days when his body was found.
Eddie Brown, Sr., identified Ross's body from a photograph the police showed him. He noted that Ross's body was clothed the same as he was on the last day he saw Ross on 14 February 2001.
Defendant testified the fight with Ross ended on 13 February 2001. The words exchanged and defendant's anger were only directed at fighting with Ross, not killing him. Defendant stated that he did not call Clyburn, seek to purchase a gun, was not referred to nor spoke with Hill. Defendant offered the testimony of Tanesha Morgan who claimed Clyburn did not call her home on 13 February 2001.
B. The "Rap"
In July 2001, defendant attended a party where he participated in a "freestyle rap" session. Defendant's "rap" lyrics detailed circumstances of the case at bar. The State offered the testimonies of Gwendolyn Keyes ("Keyes") and Denon Hargrove ("Hargrove"). Keyes testified she hosted a cookout where the "rap" session occurred. Hargrove testified he was the other participant in the "rap" session. When asked to describe "freestyle rapping," Hargrove explained, "It's like . . . rapping just not . . . prepared. Just like rapping off the top of your head." Hargrove testified further that he understood defendant's "rap" to mean he was talking about having killed someone.
According to Keyes, defendant rapped about "going up to some one, doing him, shooting him down on the tracks, and he did it once and will do it again." After the party, Keyes asked defendant what he meant. Defendant admitted that he shot someone four to six times and threw the gun in the river. Defendant told Keyes he was upset over Ross beating him in a fight, that he went home for a gun, rode around in a car looking for Ross, found him, and shot him as he ran away.
Defendant was arrested on 8 July 2001. When informed of the charges, defendant stated, "you don't have any witnesses, nobody saw me shoot him, [and] you don't have any evidence. You don't have a gun. I know for a fact you don't have a gun."
Defendant testified contrary to Keyes's and Hargrove's testimony. He stated that he never participated in a "rap" at the cookout. He said he did not speak with Keyes about a shooting.Defendant also presented evidence showing bias and attacking the credibility of both Keyes and Hargrove.
In August 2001, Keyes was arrested and asked defendant to post her bond. She failed to show up for court, was arrested again, and defendant was released from the bond. Keyes was taken to jail. Two former jail inmates testified that Keyes told them she would get back at defendant. She admitted that she was very upset at him for "coming off" her bond.
Hargrove testified that Keyes called him to say that she was going to tell the police what defendant had said during the "rap" and the discussion that took place afterwards. Defendant argued that Keyes and Hargrove were conspiring to implicate defendant to help themselves with their own legal troubles.
At the close of the State's evidence, defendant moved to dismiss the charge. The trial court denied this motion, and defendant presented his own evidence. At the close of all evidence, defendant renewed and the trial court again denied his motion to dismiss. The jury returned a verdict of guilty of first-degree murder on 6 February 2003. Defendant was sentenced to life imprisonment without possibility of parole. Defendant appeals.
II. Issues
The issues are whether: (1) the trial court erred by denying defendant's motion to dismiss for insufficiency of the evidence; and (2) the trial court erred by entering judgment against defendant based on a "short-form" indictment.
III. Motion to Dismiss
Defendant contends that the trial court erred by denying his motion to dismiss for insufficiency of the evidence of the first-degree murder charge both at the end of the State's evidence and renewed at the close of all evidence. We disagree.
In State v. Fritsch, our Supreme Court "reiterated the standard of review for motions to dismiss in criminal trials." 351 N.C. 373, 378-79, 526 S.E.2d 451, 455, cert. denied, 531 U.S. 890, 148 L. Ed. 2d 150 (2000) (quoting State v. Barnes, 334 N.C. 67, 430 S.E.2d 913 (1993)). The Barnes Court stated:
Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.
Barnes, 334 N.C. at 75, 430 S.E.2d at 918 (quoting State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).
Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. State v. Vick, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995) (citing State v. Vause, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)). If there is substantial evidence, whether direct, circumstantial, or both, to support a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case goes to the jury. State v. Williams, 319 N.C. 73, 79, 352 S.E.2d 428, 432 (1987) (quoting State v. Young, 312 N.C. 669, 680, 325 S.E.2d 181, 188 (1985)). But, "if the evidence is sufficient only to raise a suspicion or conjecture as to eitherthe commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." Powell, 299 N.C. at 98, 261 S.E.2d at 117 (citations omitted).
In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. State v. Gibson, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995). The trial court must also resolve any contradictions in the evidence in the State's favor. State v. Lucas, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witnesses' credibility. Id. It is concerned "only with the sufficiency of the evidence to carry the case to the jury; it is not concerned with the weight of the evidence." State v. Lowery, 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983). Ultimately, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).
Defendant was convicted for the first-degree murder of Ross. First-degree murder is the unlawful killing of a human being with malice and with premeditation and deliberation. State v. Strickland, 307 N.C. 274, 282, 298 S.E.2d 645, 652 (1983). Our Supreme Court has stated:
Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. . . . Deliberation means an intent to kill carried out in a cool state ofblood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. . . .
Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. . . . Instead, they usually must be proved by circumstantial evidence. Among other circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.
State v. Small, 328 N.C. 175, 181-82, 400 S.E.2d 413, 416 (1991) (quoting State v. Brown, 315 N.C. 40, 58-59, 337 S.E.2d 808, 822-23 (1985) (citations omitted), cert. denied, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), overruled on other grounds, State v. Vandiver, 321 N.C. 570, 364 S.E.2d 373 (1988)).
The evidence in this case, considered in the light most favorable to the State, tended to show defendant fought with Ross on 13 February 2001. After the fight, the two screamed threats back and forth to one another and defendant threatened that he was going to "f____ him up for kicking him." Kemper heard defendant talking with his friend Harper in the taxi about how "he was going to get his a____." Kemper testified that while defendant was in the taxi after the fight, he spoke on his cell phone. Kemper alsonoted that Ross was scared when he picked him up on Davis Street. Brown's two uncles testified that Ross was terrified and said defendant would kill him.
Further testimony showed defendant contacted Clyburn complaining about Ross kicking him in the head and wanting to buy a gun. Harper then called Clyburn and said, "you know he's going to kill the ____ f____, right?" Ross's body was discovered on 20 February 2001. He had been shot three times to the neck, chest, and back of the head. Eddie Brown, Sr., testified that Ross's body was clothed the same as when he last saw him alive on 14 February 2001. The time of death was determined to have occurred several days before.
Testimony of the "rap" session in July 2001 showed the scenario defendant spoke of was extremely similar to the circumstances surrounding Ross's death. He rapped to Hargrove about "doing" someone. When asked, defendant admitted to Keyes that he had shot someone and the murder weapon would never be found. When the police questioned defendant, he claimed the police did not have any evidence, witnesses, or a gun.
The evidence viewed in the light most favorable to the State sufficiently shows that defendant acted with premeditation and deliberation in killing Ross. Defendant's conduct and statements before and after the killing relate to the murder. Witnesses testified that defendant threatened Ross and made declarations of his intentions that link him to the circumstances of Ross's death. There was ill-will and previous difficulty between the partiesshown by the fight on 13 February 2001. Testimony was presented that defendant shot Ross while he was running from defendant. Three gun shot wounds to Ross's chest, neck, and the back of his head show that the killing was done in a brutal manner.
Defendant contends the testimonies of Clyburn, Keyes, and Hargrove are biased, contradictory, and lack credibility. Our Supreme Court has held that the credibility of and the weight given to a witness's testimony is determined by the jury, not the court. State v. Upright, 72 N.C. App. 94, 100, 323 S.E.2d 479, 484 (1984); see also State v. Miller, 270 N.C. 726, 730-31, 154 S.E.2d 902, 904-05 (1967). Contradictions and inconsistencies are credibility factors the jury considers and are not grounds for dismissal. State v. Benson, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992) (quoting State v. Earnhardt, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982)). Defendant was provided the opportunity to and attempted to impeach these witnesses through cross-examination, his testimony, and the testimony of his witnesses.
We hold the State presented sufficient evidence for the jury to determine which witnesses and what evidence were credible. The jury has the ultimate responsibility of determining the credibility of and weight given to the evidence. This assignment of error is overruled.
IV. Short-Form Indictment
Defendant argues that the short-form murder indictment violated his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and under Article I,§§ 19, 22, 23, and 27 of the North Carolina Constitution. We disagree.
Short-form indictments for homicide are permitted by N.C. Gen. Stat. § 15-144 (2003) which states:
In indictments for murder and manslaughter, it is not necessary to allege matter not required to be proved on the trial; but in the body of the indictment, after naming the person accused, and the county of his residence, the date of the offense, the averment "with force and arms," and the county of the alleged commission of the offense, as is now usual, it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law . . . and any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law. . . .
Our Supreme Court has consistently held that the statutorily authorized short-form indictment is sufficient to charge first-degree murder. State v. Maske, 358 N.C. 40, 50, 591 S.E.2d 521, 528 (2004) (quoting State v. Hunt, 357 N.C. 257, 582 S.E.2d 593, cert. denied, 539 U.S. 985, 156 L. Ed. 2d 702 (2003)). It is well settled that short-form indictments authorized by N.C. Gen. Stat. § 15-144 meet state and federal constitutional requirements. State v. Garcia, 358 N.C. 382, 388, 597 S.E.2d 724, 731 (2004); see State v. Mitchell, 353 N.C. 309, 328-29, 543 S.E.2d 830, 842, cert. denied, 534 U.S. 1000, 151 L. Ed. 2d 389 (2001); State v. Davis, 353 N.C. 1, 44-45, 539 S.E.2d 243, 271 (2000), cert. denied, 534 U.S. 839, 151 L. Ed. 2d 55 (2001); State v. Braxton, 352 N.C. 158, 173-75, 531 S.E.2d 428, 436-38 (2000), cert. denied, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); State v. Wallace, 351 N.C. 481, 504-08,528 S.E.2d 326, 341-43, cert. denied, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000).
We are bound by the decisions of the North Carolina Supreme Court and prior decisions of this Court. In the Matter of Appeal from Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Defendant was charged and convicted under a short-form indictment for first-degree murder in compliance with N.C. Gen. Stat. § 15-144. The indictment is constitutionally sufficient. For these reasons, the trial court correctly denied defendant's motion to dismiss. This assignment of error is overruled.
VI. Conclusion
We recognized in State v. Doyle that this Court on assignments of error on short-form indictments has "reviewed over fifty additional decisions in which this issue [was] raised and rejected by our Supreme Court and this Court [during the previous] three years." 161 N.C. App. 247, 254, 587 S.E.2d 917, 922 (2003) (citations omitted). These decisions consistently hold that the short-form murder indictment is constitutional. Id.
Defendant failed to show the trial court erred in denying his motion to dismiss for insufficiency of the evidence. Defendant also failed to show that the short-form murder indictment violated his rights under the United States and North Carolina Constitutions. Defendant has failed to show any error occurred at his trial.
No error.
Judges HUDSON and BRYANT concur.
Report per Rule 30(e).